Hon. T. O. C. HARRISON, } Judges.
Hon. T. L. NORVAL,

Hon. ROBERT RYAN,
Hon. JOHN M. RAGAN, } Commissioners.
Hon. FRANK IRVINE,

STATE OF NEBRASKA v. MIDLAND STATE BANK AND JO-
SEPH W. THOMAS, RECEIVER, APPELLANTS, AND
SCHOOL DISTRICT NO. 5, DOUGLAS COUNTY, APPEL-
LEE.

FILED JUNE 15, 1897. No. 9053.

1. **School Districts: DEPOSIT BY TREASURER: BANKS.** It is not within
the power of the treasurer of a school district by a general deposit
of funds held by virtue of his office to create between such district
and his banker the relation of debtor and creditor.

2. ———: ———: INSOLVENCY OF BANK: TRUST FUNDS. A banker by
receiving on deposit from a school district treasurer funds known
to be held by the latter in his official capacity becomes thereby a
trustee for the beneficial owner with respect to such funds, and
the same may, upon his insolvency, be recovered by the owner as
a preferred claim against his estate.

APPEAL from the district court of Douglas county.
Heard below before KEYSOR, J. *Affirmed.*

(1)

*John L. Kennedy*, for appellants.

*Byron G. Burbank* and *McCoy & Olmsted*, contra.

POST, C. J.

This is an appeal by the receiver from an order of the district court for Douglas county preferring the claim of appellee, school district No. 5 of said county, against the Midland State Bank, recently impounded on motion of the state banking board. The facts essential to an understanding of the controversy are as follows: On the 12th day of February, 1896, John Bondesson, as treasurer of the appellee district, deposited in the bank above named the sum of $1,308.08, money of said district, and held by him as such, and that he subsequently made other deposits of funds entrusted to him as such treasurer amounting to $2,241.83. He also checked against his said account from time to time in payment of orders or warrants drawn by the district board, so that there was to his credit in said bank when it passed into the hands of the receiver the sum of $1,463.86. The original credit was given to Bondesson as treasurer and the pass-book in which the several credits were entered by the cashier shows an account between the bank and the school district. The inference is therefore irresistible that the bank was at all times advised of the fact that the money deposited belonged not to Bondesson, but to appellee.

The powers and duties of school district treasurers are defined by section 5, subdivision 4, of chapter 79, Compiled Statutes, entitled "Schools," in the following language: "It shall be the duty of the treasurer of each district to apply for and receive from the county treasurer all school moneys apportioned to the district, or collected for the same by said county treasurer, upon order of the director, countersigned by the moderator of each district, all moneys received by him." And in section 9 of subdivision 11 appears the following inhibition upon the pow-

ers of the treasurer: "School district treasurers are forbidden to lend or use any part of the school moneys which may be in their hands under penalty of fine and imprisonment under the provisions of the statute regarding embezzlement." No question is here raised of the right of a school district treasurer, or other officer charged with custody of public funds, to deposit the same in bank for safe-keeping, provided he so far retains the control over them that they may be by him reclaimed at any time. It is, however, contended that the treasurer was, in this instance, without authority to make a general deposit of the funds in his hands, in the sense that the relation of debtor and creditor would result therefrom as between the school district and the bank, and to that proposition attention will now be directed. It has been many times held that when, except as specially authorized by statute, a treasurer, or other custodian of public money, makes a general deposit thereof in his own name, a trust results in favor of the beneficial owner, and that upon the insolvency of the bank receiving such funds with notice of their character, its estate is chargeable with the full amount of the deposit to the prejudice of nonpreferred creditors. (See *Independent District of Boyer v. King*, 80 Ia., 497; *Bunton v. King*, 80 Ia., 506; *Myers v. Board of Education of Clay Center*, 51 Kan., 87.) The principle underlying the cases above cited has been often recognized in this state in the distribution of the assets of insolvent banks. (See *Anheuser-Busch Brewing Ass'n v. Morris*, 36 Neb., 31; *Griffith v. Chase*, 36 Neb., 328; *Capital Nat. Bank v. Coldwater Nat. Bank*, 49 Neb., 786.) True, the two classes of cases differ in one respect, viz., in the former the inhibition results from the statute and the policy of the law applicable to custodians of public money, while in the latter the circumstances attending the deposit are such as to amount to a fraud against the owner of the fund, although the wrong in each consists in a violation of a trust relation with respect to the subject of the controversy. We are, in support of the opposing view, referred

by counsel to the case *Allibone v. Ames*, 68 N. W. Rep. [S. Dak.], 165, and also *State v. Hill*, 47 Neb., 456. Those cases are not, however, in our judgment, authority for the proposition asserted. The point there decided is that the word "loan," as employed in the statutory inhibition upon the powers of the officers concerned, is used in its restricted sense and includes those transactions only in which the conventional relation of borrower and lender exists,—in brief, that a public officer, by depositing in bank money entrusted to his care in order to preserve the same, is not *ipso facto* guilty of conversion. In neither case was the question presented of the power of a treasurer by a deposit of money in his hands as such, to create the relation of debtor and creditor between the bank and the public body whose commission he holds. The judgment of the district court is right and will be

AFFIRMED.