(December 16, 1898.)

## STATE v. THUM, RECEIVER.

[55 Pac. 858.]

PUBLIC MONEY—TRUST FUND, WHEN DEPOSITED IN BANK—BELONGS
TO TRUE OWNER.—Public money deposited by a public officer in
a bank becomes a trust fund, and not part of the estate of the
bank, and, in case of the insolvency of the bank, its receiver must
treat such fund as the property of the true owner, and not of the
bank.

INSOLVENT BANK—CREDITORS OF.—The creditors of an insolvent bank
are not entitled to share *pro rata* in public money deposited in
such bank.

PLEADING.—A defect in a complaint may be cured by allegation in the
answer.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

R. E. McFarland, Attorney General, and Hawley & Puckett,
for Appellant.

The money belonging, as it did, to the state, and being de-
posited in the bank by the treasurer, made it a trust fund and
gave the state, as the true owner, the right to recover the

amount from the bank assets, regardless of the fact that it had mingled with other funds, and that such amount of money had not been kept on hand. (*Wolffe v. State,* 79 Ala. 201, 58 Am. Rep. 590; *Van Alen v. American Nat. Bank,* 52 N. Y. 1; *Merrill v. Bank of Norfolk,* 19 Pick. 32; *National Bank v. Insurance Co.,* 104 U. S. 67, and cases cited.) When a public treasurer, without authority of law, deposits public moneys in bank as treasurer, the title of the moneys does not pass to the bank, although there is no agreement that the identical bills shall be returned, and they are mixed with the bank's general funds, and the county is entitled to recover an equal amount from a receiver of the bank prior to the payment of the general depositors. (*San Diego County v. California Nat. Bank,* 52 Fed. 59; *Hot Springs School Dist. v. First Nat. Bank,* 61 Fed. 417; *Myers v. Board of Education,* 51 Kan. 87, 37 Am. St. Rep. 263, 32 Pac. 658, 662; *Foster v. Rincker,* 4 Wyo. 484, 35 Pac. 470; *Hubbard v. Alamo Irr. Co.,* 53 Kan. 637, 36 Pac. 1053-1055, 37 Pac. 625; *City of Larned v. Jordan,* 55 Kan. 124, 39 Pac. 1030, 1031; *Ryan v. Phillips,* 3 Kan. App. 704, 44 Pac. 909, 910; *State v. Midland State Bank,* 52 Neb. 1, 66 Am. St. Rep. 484, 71 N. W. 1011; *Shepherd v. Meridian Bank,* 149 Ind. 20, 48 N. E. 352; *Kimmel v. Dickson,* 5 S. Dak. 221, 49 Am. St. Rep. 869, 58 N. W. 561, 25 L. R. A. 309; Mechem on Public Officers, sec. 922; *Farmers' Bank v. King,* 57 Pa. St. 202, 98 Am. Dec. 215; Boone on Banking, sec. 285; *Baker v. New York Nat. Bank,* 100 N. Y. 31, 53 Am. Rep. 150; *People v. City Bank,* 96 N. Y. 37; *Burnett v. First Nat. Bank,* 38 Mich. 630; *Skinner v. Bank,* 4 Allen, 290; *Allen v. St. Louis Bank,* 120 U. S. 40, 7 Sup. Ct. Rep. 460; Boone on Banking, sec. 62; *Slate v. Midland State Bank,* 52 Neb. 1, 66 Am. St. Rep. 484, 71 N. W. 1011; *Independent Dist. of Boyer v. King,* 80 Iowa, 497, 45 N. W. 909.) Sureties—subrogation of to rights of obligee. (Murfree on Official Bonds, sec. 671; 2 Brandt on Guaranty and Suretyship, 465, 479, note; *City of Keokuk v. Love,* 31 Iowa, 119; *Appeal of Lebanon Co.* (Pa.), 19 Atl. 303; *Blake v. Traders' Nat. Bank,* 145 Mass. 13, 12 N. E. 414, 418; *Livingston v. Anderson,* 80 Ga. 175, 5 S. E. 49.) Separate accounts of a party kept in distinct characters at a

bank must be kept distinct, and a trust account cannot be applied to pay a debt due on a personal account. (Morse on Banking, 40; Boone on Banking, secs. 65, 66, 285, 289; *National Bank v. Insurance Co.,* 104 U. S. 54, 68; *Union Stockyards Bank v. Gillepsie,* 137 U. S. 422, 11 Sup. Ct. Rep. 118; *International Bank of Chicago v. Jones,* 119 Ill. 407, 59 Am. Rep. 807, 9 N. E. 886; *Coates v. Preston,* 105 Ill. 470, 473, and cases cited; *Pennell v. Deffel,* 4 De Gex, M. & G. 383, 390.)

Lyttleton Price, for Respondent.

The deposit being a general deposit, is, in legal effect, a loan to the bank. The state treasurer may not loan public moneys. If he does so, the state cannot seek to recover the money loaned without ratifying the loan. This could be done only by legislative authority, if at all. (*State v. Keim,* 8 Neb. 63; Approved in *First Nat. Bank v. Gandy,* 11 Neb. 431, 9 N. W. 566; *State v. Bartley,* 39 Neb. 353, 58 N. W. 172, 176.) When a depositor makes a general deposit in a bank the relation of debtor and creditor is established. (*Janin v. London etc. Bank,* 92 Cal. 14, 27 Am. St. Rep. 82, 27 Pac. 1100; *State v. Buttles,* 3 Ohio St. 309; *Bank v. Windisch etc. Co.,* 50 Ohio St. 151, 40 Am. St. Rep. 660, 33 N. E. 1054; *Henry v. Martin,* 88 Wis. 367, 60 N. W. 263; *McLain v. Wallace,* 103 Ind. 562, 5 N. E. 911; *Alston v. State,* 92 Ala. 124, 9 South. 732; *State of New York v. Mechanics' etc. Institution,* 1 Am. & Eng. Corp. Cas. 573; *Balbach v. Frelinghuysen,* 15 Fed. 675; 5 Thompson on Corporations, secs. 7098, 7101; Story on Bailments, Bennett's ed., sec. 88; *Ruffin v. Board Co. Commrs.,* 69 N. C. 498, 509; *Brahm v. Adkins,* 77 Ill. 263; *Keene v. Collier,* 1 Met. (Ky.) 415 ). The addition of Storer's official title does not affect the character of the deposit nor change his relation to the bank as its creditor. (*Alston v. State,* 92 Ala. 124, 9 South. 732; *Otis v. Gross,* 96 Ill. 612, 36 Am. Rep. 157, 159; *McLain v. Wallace,* 103 Ind. 562, 5 N. E. 911; *Citizens' Bank v. Alexander,* 120 Pa. St. 476, 14 Atl. 402; *Eyrman v. St. Louis Bank,* 84 Mo. 408; *Swartout v. Bank,* 5 Denio, 555; *German Bank v. Heinstedt,* 42 Ark. 62; *Lowry v. Polk Co.,* 51 Iowa, 50, 33 Am. Rep. 114, 115, 49 N. W. 1049.) Where the

deposit is not special there is no trust relation. (5 Thompson on Corporations, secs. 7102, 7104; 2 Story's Equity Jurisprudence, sec. 1259; 2 Pomeroy's Equity Jurisprudence, sec. 1058; *Multnomah Co. v. Oregon Nat. Bank,* 61 Fed. 912; *St. Louis etc. Assn. v. Austin,* 100 Ala. 313, 13 South. 908; *Bank v. Smith,* 15 Fed. 858; *Ind. Dist. Pella v. Beard,* 83 Fed. 5-17.)

Petition by the state, on the relation of J. H. Anderson, state auditor, and R. E. McFarland, attorney general, in an action by the First National Bank of Pocatello against C. Bunting & Co. The respondent, C. E. Thum, was appointed receiver of C. Bunting & Co., bankers, an insolvent corporation, on the fifteenth day of February, 1897, by order of the district court of the fifth judicial district, made in the action brought by the First National Bank of Pocatello against said C. Bunting & Co., bankers. On February 8, 1898, the state ex rel. J. H. Anderson, state auditor, and R. E. McFarland, attorney general, pursuant to order of said district court granting leave so to do, filed its petition in said action, in which it is alleged: That one George H. Storer, was duly elected at the regular November election in 1896 state treasurer of the state of Idaho, and duly qualified as such officer, and assumed the duties of said office; that said Storer, as such treasurer, has deposited in and with said C. Bunting & Co., bankers, large sums of money, belonging to the state, and which came to his hands as such treasurer; that said moneys were received by said C. Bunting & Co., bankers, and credited on its books to said George H. Storer as treasurer, with full notice and knowledge that said moneys belonged to and were the property of the state; that said corporation is insolvent, and has suspended payment, and is unable to pay its indebtedness, and that there came to the hands of the respondent, C. E. Thum, as receiver of said banking corporation, the sum of $11,101.16, money of the state; that the state has demanded payment of said sum from said receiver, but said receiver fails and refuses to pay same to the state; that said receiver has disbursed large portions of the assets of said banking corporation, and threatens and intends to pay out and distribute the remaining assets of said banking corporation remaining in his hands, and said

money of the state, to the creditors of said corporation; that said receiver claims that said money deposited by said Storer as treasurer belongs to, and is a part of, the estate of the said corporation, and will, unless otherwise directed by the court, pay out said money to the creditors, whereby same will be lost to the state. To this petition the respondent made answer, in which he denies that said Storer deposited any sum or sums of money belonging to the state; that there is a credit on the books of said C. Bunting & Co., bankers, to the credit of said Storer, state treasurer; that said credit is the result of deposits of checks made by said Storer; that when said Storer came into office as such treasurer there were, to the credit of C. Bunting, state treasurer, his predecessor, large sums of money deposited in said bank by his predecessor; that said Storer received from his predecessor a check for such sum; and that said Storer continued to keep, as state treasurer, with said bank, an account based upon credit received from checks from his predecessor, and other checks, and that said Storer deposited no money or cash in said bank. The evidence shows that C. Bunting, former treasurer, gave to his successor, George H. Storer, state treasurer, January 6, 1897, a check for $32,-702.58, and which check was credited by said bank to said Storer, state treasurer; that C. Bunting, as state treasurer, deposited funds of the state with said bank, and there was to his credit, as such treasurer, in said bank, on January 6, 1897, more than $32,702.58. Said Storer, state treasurer, deposited other checks in said bank, and drew his checks thereon, leaving, on February 15, 1897, a balance to his credit as state treasurer of something over $11,101.16. On the trial, after the above facts had been proven, the respondent moved for a nonsuit, which the trial court granted, whereupon judgment was entered dismissing the appellant's petition. From this judgment the state appeals. The evidence is set forth in appellant's bill of exceptions. Reversed.

QUARLES, J. (After Stating the Facts.)—The contention of the respondent that public money deposited in a bank on general deposit, by a public officer, in violation of law, becomes the estate and property of the bank, the owner of the money so

deposited, contrary to its will, becoming a mere creditor of the bank, raises the principal question in this case. The district court sustained this contention. We are unable to do so. The position of the state in this case is unlike that of an ordinary depositor in a bank. A party who deposits money in a bank on general deposit voluntarily becomes the creditor of such bank, and, impliedly at least, agrees that the bank may commingle such money with its own, and use it until called for by such depositor. The relation of debtor and creditor arises by mutual consent. Not so in the case at bar. The state never consented to become the creditor of C. Bunting & Co., bankers. It never deposited, or consented that the funds in question should or might be deposited, with said bank on general deposit. On the other hand, the state absolutely prohibited the making of such deposit. Sections 6975-6977 of the Revised Statutes, are as follows:

"Sec. 6975. Each officer of this territory, or of any county, city, town, or district of this territory, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either:

"1. Without authority of law, appropriates the same or any portion thereof to his own use, or to the use of another; or,

"2. Loans the same or any portion thereof; or, having the possession or control of any public money, makes a profit out of, or uses the same for any purpose not authorized by law; or,

"3. Fails to keep the same in his possession until disbursed or paid out by authority of law; or,

"4. Deposits the same or any portion thereof in any bank, or with any banker or other person, otherwise than on special deposit; or,

"5. Changes or converts any portion thereof from coin into currency, or from currency into coin or other currency, without authority of law; or,

"6. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same; or,

"7. Fraudulently alters, falsifies, conceals, destroys, or obliterates any such account; or,

"8. Willfully refuses or omits to pay over, on demand, any

public moneys in his hands, upon the presentation of a draft, order, or warrant drawn upon such moneys by competent authority; or,

"9. Willfully omits to transfer the same, when such transfer is required by law; or,

"10. Willfully omits or refuses to pay over to any officer or person authorized by law to receive the same, any money received by him under any duty imposed by law so to pay over the same; is punishable by imprisonment in the territorial prison for not less than one nor more than ten years, and is disqualified from holding any office in this territory.

"Sec. 6976. Every officer charged with the recipt, safekeeping, or disbursement of public moneys, who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of felony.

"Sec. 6977. The phrase 'public moneys,' as used in the two preceding sections, includes all bonds and evidence of indebtedness, and all moneys belonging to the territory, or any city, county, town, or district therein, and all moneys, bonds, and evidences of indebtedness received or held by territorial, county, district, city or town officers in their official capacity."

The former treasurer, C. Bunting, had no authority to deposit public money in the bank of C. Bunting & Co., bankers, on general deposit. The bank had, and was charged with express notice that the state treasurer had, no authority to make such general deposit. More than that; the bank, nor the officers of said bank, after receiving said money, could mingle it with the funds of the bank, or loan it, or make profit out of it, or appropriate it, without committing a felony. If a bank receives public money, it must do so on special deposit. It must keep such money separate from its own funds. It must not use it or loan it. If any of these acts are committed, the persons or officers who participate are guilty of a felony. Now, it must necessarily follow that, the state treasurer, having no authority to deposit public money with a bank on general deposit, but he being authorized to deposit such money with a bank on special deposit, the instant that C. Bunting & Co. received public money from the state treasurer, it did so

on special deposit, and that if the officers or any officer of said bank thereafter used said money, or commingled it with the money of the bank, or loaned it, such officers or officer, by such act, committed a felony. The bank could not appropriate it. Hence it did not become the estate or property of the bank. If the bank was still doing business, it could not claim the money in controversy, or any part thereof, as its own. It could assert no claim adverse to the state to such money, or any part thereof. The respondent, as receiver of said bank, can assert no claim to said money which the bank could not itself assert if it was still doing business. The creditors of the bank have no interest or claim upon said money. The joint wrong and criminal act of the agent of the state and of the officers of the bank does not redound to the financial interest of the creditors of the bank. The bank received the money in trust for the true owner, the state. It must be regarded as a trustee. (*Wolffe v. State,* 79 Ala. 201, 58 Am. Rep. 590; *Bank v. Hummel,* 14 Colo. 259, 20 Am. St. Rep. 257, 23 Pac. 986; *State v. Midland State Bank,* 52 Neb. 1, 66 Am. St. Rep. 484, 71 N. W. 1011; *Foster v. Rincker,* 4 Wyo. 484, 35 Pac. 470; *Kimmel v. Dickson,* 5 S. Dak. 221, 49 Am. St. Rep. 861, 58 N. W. 561; Mechem on Public Officers, sec. 922; *Winslow v. Iron Co.* (Tenn. Ch. App.), 42 S. W. 698; *Hubbard v. Manufacturing Co.,* 53 Kan. 637, 36 Pac. 1053, 37 Pac. 625; *Ryan v. Phillips,* 3 Kan. App. 704, 44 Pac. 909; *City of Larned v. Jordan,* 55 Kan. 124, 39 Pac. 1030.) We could cite many other authorities to the same effect. In *Vane v. Towle,* 5 Idaho, 471, 50 Pac., we said, at page 1008: "Trustees must, in dealing with trust funds, and with the beneficiaries thereof, show the utmost good faith and fair dealing. They can make no profit out of the trust funds, nor obtain any advantage over the beneficiaries of such funds; and a trustee cannot assert an adverse claim to funds which he receives in his fiduciary capacity." The respondent, as receiver, is in the same position as the bank. He can assert no adverse claim against the state to the money in question. That fund, being a trust fund, is no part of the insolvent bank's estate. It must be paid to the state before the bank's estate is distributed. Creditors of a bank

need not expect, under the laws of this state, to have public funds in the bank distributed among themselves in case of the failure of such bank. Could it be contended that if A robbed B of a large sum of money, and then went into insolvency, that that money should be distributed among A's creditors? Certainly not. We cannot give our consent to the doctrine or theory that if two persons, in handling a particular fund, commit a felony with reference to such fund, their criminal act devests the owner of title, or creates the relation of debtor and creditor between the true owner of such fund and the parties who commit the criminal act.

The respondent insists that the motion for nonsuit was properly granted on the ground of variance between the allegation and proof. It is true that the evidence shows that some or all of the money in question was deposited with C. Bunting & Co., bankers, by the former treasurer, and not by the present one. In this respect the petition is defective. But such defect is cured by the allegations of the answer, wherein it is alleged that such money was placed in said bank by C. Bunting, former treasurer, who gave his check therefor to Treasurer Storer. The judgment appealed from is reversed, and the cause remanded to the district court, with instructions to enter judgment in favor of the state as demanded in the petition, and to direct the respondent, C. E. Thum, as receiver, to pay the said judgment out of assets of the said C. Bunting & Co. in his hands before any distribution of such assets among the creditors of said banking corporation. Costs of appeal to be paid out of funds in the hands of said receiver.

Sullivan, C. J., and Huston, J., concur.

ON REHEARING.

(January 11, 1899.)

HUSTON, C. J.,—A rehearing is asked in this case principally upon the ground that the respondent had no opportunity of presenting any evidence in the court below. It seems to us, this claim comes a little late. The record shows that when the

case was called for trial the respondent was placed on the stand by plaintiff, and testified as follows:

"I am the receiver in the cause of *First National Bank of Pocatello v. C. Bunting & Co., Bankers,* and have been since February 15, 1897, and prior to that time had been, an employee in the bank of C. Bunting & Co. Have charge of the books of that bank. C. Bunting was state treasurer of Idaho prior to the beginning of the term of office of George H. Storer, the present treasurer. In January, 1897, Bunting, as treasurer, turned over to Storer, as his successor, the office of state treasurer. Part of the state money was on deposit in the Capital State Bank of Boise City, and part in the Bank of C. Bunting & Co., Blackfoot. The books of C. Bunting & Co., bankers, show that there was deposited to the credit of George H. Storer, as state treasurer, on January 6, 1897, the sum of $32,702.58, and that afterward there was deposited by said treasurer the sum of $8,477.27, and that there was paid out upon the checks of the treasurer and for state warrants all of said amounts except the sum of $12,683.93, shown by the books to be due, but which has been reduced by reason of certain interest amounts paid out, and not determined at the time the bank was closed, but which I have, as receiver, since ascertained to be the sum of $11,022.38.

"The account of C. Bunting, as state treasurer for 1897, as shown by the book of original entries, in which said account was kept, is as follows:

Opinion of the Court—Huston, C. J., on Rehearing.

C. Bunting, State Treasurer.

Page 246.

1897.              1897.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jan. 4 | 163,162,164 | 7 | 991 85 | Jan. 2 | Bal. L. | 299 | 34,726 80 |
| 5 | | 9 | 504 16 | | | | 28 21 |
| 6 | | 12 | 32,702 58 | | | | |
| 7 | | 13 | 350 | | | | |
| 8 | | 15 | 150 | | | | |
| | Balance | | 28 21 | | | | 28 21 |
| | | | - 28 21 | | | . | 28 21 |
| | | | | Feb. 15 | Balance | | 28 21 |

"The account of George H. Storer, as state treasurer, as shown by said book, is as follows:

1897.              1897.

George H. Storer, State Treasurer.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jan. 27 | | 35 | 351 15 | Jan. 6 | | 11 | 32,702 58 |
| 28 | | 36 | 114 66 | 29 | | 37 | 8,477 27 |
| Feb. 11 | | 52 | 9,173 27 | | | | 40,714 04 |
| 13 | State Warr'ts Balance | 54 | 19,552 84 | Feb. 1 | | 40 | 696 |
| | | | 12,683 93 | | | | |
| | | | 41,410 04 | | | | 41,410 04 |
| | | | | Feb. 15 | Balance | | 12,683 93 |

" (To the introduction of said accounts as evidence the defense objected on the grounds that it was incompetent, immaterial, and irrelevant. Objection overruled, and exception taken.)

"The book from which these accounts are taken is the general ledger of the bank, which is a book of original entries, and the only book of the bank which shows accounts. The entry on the Storer account of $32,702.50 represents that part of the fund which was on deposit in the bank at Blackfoot, turned over by C. Bunting to Storer at the time Bunting turned over the office of state treasurer. This sum was turned over by means of a check drawn by C. Bunting, state treasurer, on C. Bunting & Co., bankers, and payable to George H. Storer, treas-

urer. The other entries in the Storer account represent checks turned into the bank by Storer. It was the custom in the bank to credit the checks received, when they were considered good, at the time of their receipt. There is nothing in the bank to show any of these checks were dishonored, and, as a matter of fact, they were all paid."

The testimony of the respondent was the only oral proof offered in the case, and, together with the exhibits produced by him, constitute all the evidence in the record. After the evidence was closed, the respondent moved for a nonsuit, which was granted.

How can the respondent claim that he had no opportunity to present any evidence? While respondent was upon the stand he was subjected to a very rigid cross-examination by his own attorney, during which, in answer to certain interrogatories propounded to him, he stated, in substance: That on the sixth day of January, 1897, the amount of money in the bank of C. Bunting & Co. was about $11,000; that, up to a short time before failure, the daily balance averaged about $10,000. The contention of respondent is that there never was any money deposited by Storer; that he only deposited checks. These checks were under the provisions of section 6977 of the Revised Statutes of Idaho, "public moneys," and as such were deposited by the treasurer, Storer, in the bank of C. Bunting & Co., and were so received by said bank, and were made available by the treasurer in paying the indebtedness of the state; $41,410.04 was so deposited by the treasurer, and of this amount, according to the testimony of respondent, all but $11,022.38 was checked out by the treasurer, and yet counsel contends that no money was ever deposited. This contention seems to us a *non sequitur*. The law made the checks of Bunting or anyone else in the hands of the treasurer "public moneys." As such they were deposited by the treasurer, and were checked against by him in paying liabilities of the state, and all such checks were paid. Respondent appears to lay considerable stress upon the fact that the average daily balances in the bank from January 6th to the time of the failure were only about $10,000. While not as conversant with the details of the banking business as the learned

judge of the district court, or the learned counsel, it seems to us that the daily balances, as shown by the books of the bank, could hardly be accepted as conclusive of the amount of daily deposits. A bank may receive $100,000 to-day on deposit and through collections, and may on the same day, by loans and otherwise, disburse $105,000. Its daily balance in such case would be the same as the day before, less $5,000; but would that be indicative, even, much less conclusive, of the amount of deposits received or of business done on that day? We have examined with much care the case of *Beard v. Independent Dist.*, 31 C. C. A. 562, 88 Fed. 375. That case arose under statutes entirely unlike those of this state. In that case the court says (page 377) : "The question for decision is, what rule should be followed by a receiver of a national bank in distributing the assets of the bank, which have come into his hands under the provisions of the laws of the United States, in cases wherein it appears that trust funds have been received by the bank in the course of its business?" Such is not the question in this case. The bank of C. Bunting & Co. was not a national bank. The assets of that bank did not come into the hands of the respondent as receiver under any law of the United States. The court in the case in *Beard v. Independent Dist.*, 31 C. C. A. 562, 88 Fed. 375, seems to hold that the real point at issue in that case was, were the funds of the bank augmented by the addition thereto of the trust funds? We do not see how such a question could be raised under the proofs in this case.

We are unable to see that any different result could be reached in this case from further argument. In fact, the question in this case does not seem to be so much one of fact as the application of the law to facts about which there is no contention. Counsel for respondent contends that the deposit of the checks by Storer was not a deposit of money such as would create a trust fund on the part of the state. With this contention we cannot agree without abrogating the provisions of our statutes. The plaintiff would, we think, have been entitled, on motion, to a judgment on the pleadings in this case. The depositing of the checks by Storer is admitted by the answer, and, said checks being "public moneys" in the hands of said Storer, and,

being by him deposited as "public moneys" in the bank of C. Bunting & Co., we are unable to see what there is to be urged against a judgment for plaintiff upon the pleadings. Rehearing denied.

Quarles, J., concurs.

SULLIVAN, J., Dissenting.—Respondent contends, in his petition for a rehearing, that the only question of law presented on appeal was: Did a trust relation arise from a deposit of money in the Bunting bank by Storer, as state treasurer, and which had come to the receiver's hands, which would allow the state to pursue and take it? It is contended that it never was claimed that a deposit by Storer's predecessor in office, Bunting, could be shown, or was shown, as a basis for recovery in this action, or that there was any admission in respondent's answer that would relieve the appellant from proving his allegations. That it appeared from the opinion of the court that an actual deposit of money belonging to the state was a necessity to the state's recovery. That as there was no proof of Storer's having made any deposit, the court then considered whether recovery could be had upon the evidence or admissions that Storer's predecessor had deposited money there. And in support of this contention quotes from the opinion the following: "The respondent insists that the motion for nonsuit was properly granted on the ground of variance between the allegation and proof. It is true that the evidence shows that some, or all, of the money in question was deposited with C. Bunting & Co., bankers, by the former treasurer, and not by the present one. In this respect the petition is defective. But such defect is cured by the allegations of the answer, wherein it is alleged that such money was placed in said bank by C. Bunting, former treasurer, who gave the check therefor to Treasurer Storer." And contends that the court misapprehended petitioner's position in this, to wit, that it is not a variance between allegation and proof, but that it is a clear failure of proof. Also contends that the court mistakes the fact when it says: "It is true that the evidence shows that some, or all, of the money in question was deposited . . . . by the former treasurer, and not by the present

one." And contends that all the testimony goes to what appears from the books only, and, on this subject, nothing of the witness' own knowledge. It is also contended that the evidence failed utterly in establishing the allegation that Storer made any deposit whatever as alleged. It is also contended that it was not shown where the money belonging to the state was deposited, and quotes the following from the testimony of the state's witness, the receiver, to wit: "Mr. Bunting gave Storer two checks, one of which was drawn on the Capital State Bank at Boise and the other on C. Bunting & Co.'s Bank at Blackfoot. These two checks represented the funds in the state treasury at that time. I know this, because I examined the state treasurer's books. I don't know where the money was that belonged to the various funds. Storer gave Bunting a receipt for the checks." It is also urged that the court evidently misapprehends the averments in the answer wherein the opinion states that the "petition is defective," but that such defect is cured by the answer, and contends that the averments in the answer do not admit that Bunting, as state treasurer, made a deposit of state funds in said bank; and quotes the following from the answer: "Said receiver denies that the said pretended or any moneys mentioned in the said petition ever were or are now credited on the books of C. Bunting & Co., bankers, defendants, or that the same were ever received by said C. Bunting & Co., bankers, with full or any notice or knowledge that the said moneys belonged to the petitioner, the state of Idaho, or that any moneys were ever deposited by him at all." "Further answering the said petition, said receiver denies that the said or any moneys whatever belonging to the state of Idaho ever came to his hands, as receiver or otherwise." "There was a credit on the books of the said defendant bank to C. Bunting, as state treasurer, of a considerable sum of money," etc., and, in folio 26, "His said predecessor gave him a check on the defendant bank for the full amount of money in his (not the bank's) hands belonging to the state," etc. And contends that said averments are all that is contained in said answer touching said subject, and that said allegations do not admit a deposit by Bunting, either directly or indirectly, by intendment

or by fair construction; that it denies that any deposit of the state money was ever made in said bank by anybody, at any time. The point made by the foregoing is that the proof failed as to the particular thing alleged in the petition, to wit, that the deposit was made by Storer, state treasurer, and that the defect in proof was not made good by admissions in the answer. It is also contended that the court erred in remanding the case with instructions to enter judgment for the state. The appeal was from a judgment of nonsuit, granted on motion of the respondent. Said motion was made at the close of plaintiff's evidence, and before the defendant had put in any evidence whatever. It is contended that by remanding the case with instructions to enter judgment for the state the defendant is deprived of the right to make a defense on the merits and facts of the case; that such proceeding is not due process of law, and denies the defendant a substantial right—that of making his defense on the merits.

In *Bagley v. Eaton,* 10 Cal. 149, it is held as follows: "It is not our practice to direct the entry of a judgment in the court below in actions at law, except when the facts have been found by the judge who tried the cause, or by the special verdict of a jury, or when, from the character of the action or pleadings, one of the parties is entitled to judgment without proof." In *Cooper v. Shepardson,* 51 Cal. 300, the court reversed the case, but declined to order final judgment, saying: "It may be that upon a new trial a different case will be made out." Hayne, in his work on New Trial and Appeal (section 296), holds that, when all of the material facts are established in the court below, the supreme court, in reversing a judgment, may, in its discretion, direct final judgment. In the case at bar the material facts were not found by the court below. Judgment of nonsuit was entered against the plaintiff at the close of its evidence. The court found no facts upon which a judgment could be based in favor of the state; and in that case this court must find such facts in order to direct a judgment against the defendant, who is respondent here. To do so would be to exercise original, rather than appellate, jurisdiction. Of course, a different question would be presented if, under the pleadings,

the appellant was entitled to judgment without proof; and in that case a trial court, on proper application, would allow the pleadings to be amended.

The opinion of the court is based on the ground that Bunting, Storer's predecessor, deposited state money; and that conclusion is reached by holding that the answer cures a defective allegation in the complaint. On a careful re-examination of the pleadings, I am of the opinion that the answer does not admit that the predecessor of Treasurer Storer deposited said money in said bank. The admission that said bank-books show credit to said predecessor is not such an admission as would warrant the court in finding that said Bunting did make a deposit of state money when such deposit is specifically denied by the answer. The averment is that there was a credit on the books of the defendant bank to C. Bunting, as state treasurer, of a considerable sum of money. That admission is not sufficient to hold that Bunting deposited therein over $32,000 of the state's money, or of any amount whatever, without proof.

While it is true the evidence introduced by the state tends to show that Bunting, as state treasurer, had a credit in said bank, and of the amount thereof, the defendant had a right, under his answer, to show that said credit was a fictitious one, or that no public money had, as a matter of fact, been deposited in said bank. This is not an action between the Bunting Banking Company and the state, but against the receiver, who represents all of the creditors of said bank; and the creditors, through the receiver, have the right to make any legal defense that will defeat the state's claim.

This court has in this case only appellate jurisdiction, and, as the court below has found no facts on which a judgment can be based, this court cannot usurp the jurisdiction of the *nisi prius* court, and in the first instance find facts on which to base a judgment. I do not think the pleadings are such as would warrant a judgment on them without proof. The cause should have been remanded, and the receiver given an opportunity to present his defense.

While it is true the receiver, as a witness for the plaintiff, testified that said ledger was a book of original entry of said

bank, it is not shown who made said entries, or that they are correct.

The opinion of the majority of the court on the petition for a rehearing presents an additional reason for an opinion in favor of the state that was not suggested in oral argument or by brief on the hearing of the case, and that is that the checks deposited by Storer were "public money," under the provisions of section 6977 of the Revised Statutes. That point was not mooted on the hearing of this case, and it is only right and fair to the respondent that he should be heard upon points on which the decision rests. If it be said the check was public money, and must be considered such in this case, it may be that the receiver will be able to return said check—"public money"—to the plaintiff, and thus return to the state the identical "public money" deposited by Treasurer Storer; and, if the state gets the identical "public money" which it deposited by its treasurer, it ought not to complain.

The circumstances under which the case was presented to this court were most unfavorable, and the importance and far-reaching effect of the decision demand that the parties should be fully and fairly heard, and I think a rehearing should be granted.