The original opinion on this appeal was written by Adair, District Judge, sitting as a member of the court. It was concurred in by all members of the court then sitting. I think it is a clear discussion of the questions presented by the record and in the main I adhere to the views therein expressed. However, because there has remained some doubt about appellants being liable under the terms of the surety bond for the $32,000 included in the time certificate, and because of the importance of the question relating to the investment of public funds in this manner, it has been deemed advisable to grant a rehearing and give further consideration to the case.
That opinion, among other things, holds that a city has only such powers as are expressly conferred by charter or by statute, and such as are clearly implied for the carrying out of its powers expressly granted; that a city *Page 467 
must keep its funds on general deposit and invest them only as authorized by law and cannot dispose of or keep its funds in any other manner; that the taking of a time certificate of deposit for city funds already on deposit and protected by the depositary bond, is an unauthorized investment. I agree with the law as thus announced in the original opinion. Upon rehearing counsel for appellants appear to have presented their argument solely upon the theory that the court would adhere to this view. That it is so held cannot be questioned and respondent's counsel in their supplemental brief seem to concede its correctness, for they say when certain officers of the city arranged with the official depositary to change the manner in which the latter should hold the $32,000 of the city's funds, then on general deposit, so that thereafter such funds should be held on a time certificate, "all of these officers including the official depositary knew as a matter of law that the act was strictly forbidden by the statutes of this state. They knew as they were bound to know that this act might not lawfully be done."
Again on the trial of the cause below, when appellants sought to introduce the ordinance authorizing this change to a time deposit, respondent's counsel made the objection that "the city of Pocatello could not lawfully pass an ordinance containing the subject matter contained in this ordinance." Not only because all of the eminent counsel on both sides take this view, but also because a proper construction of the statute makes it so, there is no reason to doubt that the city is without authority to make a time deposit in any bank and that its attempt to do so, was in violation of law and the title to this $32,000 did not pass from the city to the bank.
If the investment of this money in a time certificate of the Bannock National Bank was "strictly forbidden by the statutes of this state," that is, if it was an unauthorized investment, title to the same could not have passed from the city to the bank under the long-established rule first declared inState v. Thum, 6 Idaho 323, 55 P. 858, and *Page 468 
again in First Nat. Bank v. C. Bunting Co., 7 Idaho 27,59 Pac. 929, 1106, and in numerous cases that have since followed that rule. I think the rule of these cases is based upon a sound public policy and that a departure from it might lead to serious consequences against public interests and that the judgment in this case must be modified to the extent of holding that the $32,000 invested in a time certificate by the City of Pocatello in the Bannock National Bank, at the time of its failure, is not within the terms of the depositary bond, and the defendants in this action are not liable for this money.
I think it must be conceded, under C. S., sec. 4046, that the officials of the City of Pocatello were without any authority to withdraw this $32,000 from the Bannock National Bank, where it was on general deposit protected by the depositary bond, subject to payment upon demand with three per cent interest on the daily balances, and invest the same in a time certificate of deposit drawing four per cent interest. Such action is clearly contrary to the provisions of this statute and to the conditions of the depositary bond. The clause, "and shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid," cannot by any judicial construction, be extended to any other class of deposits than that contemplated by the bond and authorized by law. If the city must keep its funds on general deposit or invest them only as authorized by law and cannot dispose of or keep its funds in any other manner, it cannot withdraw them from general deposit and invest such funds in the purchase of a time deposit and still hold the bondsmen liable. This would be tantamount to saying that the city, acting in violation of the Criminal Code in conjunction with the bank, may alter the conditions of the depositary bond without the knowledge or consent of the sureties.
C. S., sec. 8379, defines crimes against the revenue and property of the state. Subdivision four makes it a felony punishable for from one to ten years and disqualifies an officer doing so from ever holding any office in this state, *Page 469 
for such officer to deposit public money in a bank or with any banker or other person otherwise than on special deposit, or as otherwise authorized by law. A public official cannot create a contractual liability for the recovery of public money deposited in violation of the criminal statute referred to.
It is agreed that the city treasurer, acting under the mandate of a city ordinance, as such official drew her check against this $32,000 that was in the bank upon lawful deposit. She thereafter loaned this amount on a time certificate to the Bannock National Bank. If it were conceded that this was done merely by a bookkeeping transaction, whereby the bank upon the demand of the city officials, transferred this amount of city funds from a lawful deposit to an unlawful investment, it would not legalize the transaction.
When the treasurer drew her check for this $32,000 and the same was honored, the liability of the obligors on the depositary bond would be to that extent canceled. It was her duty to demand and receive payment only in lawful money. The bank was then a going concern and presumably able to meet its obligations. Her act in drawing this check against the city's general account was a perfectly legal transaction. Her subsequent act in investing the proceeds of this check in a time certificate of deposit of this bank, was an unauthorized and unlawful act that made her liable on her official bond. No duty rested upon the obligors of this depositary bond to prevent a wrongful diversion of these funds, after the money had been lawfully withdrawn from the bank. Nor would they be liable for an unlawful diversion by a loan to the bank or an investment in any of its securities, unless they wereparticeps criminis to the transaction, which is not claimed. The city treasurer's act in investing the proceeds of this check in a time certificate of deposit, whether in this bank or in any other bank, was unlawful and made her liable on her official bond and also brought the transaction within the inhibition of subdivision 4 of C. S., sec. 8379, which makes the deposit *Page 470 
of any portion of public money, in any bank or with any banker or other person, otherwise than on special deposit, or as otherwise authorized by law, a felony. The original deposit was made in accordance with C. S., sec. 4046, and therefore, "as otherwise provided by law." The law limits the deposit of a city's money to one or the other of these methods. It must be either a special deposit or as prescribed by C. S., sec. 4046.
Because this indemnity bond, upon which this action is based, contains the condition that it "shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid," it is erroneously argued that the obligors are liable for any misapplication of any of the city's funds that have been at any time lawfully deposited, if such misapplication is done through the joint wrongful action of the city's officers with the same depositary, although done without the knowledge or consent of the bondsmen. It is conceded, however, that appellants are not liable under the terms of the bond, if the money had been lawfully withdrawn and taken to another depositary and misappropriated by a loan in the form of a time certificate. I am unable to see the distinction. The treasurer drew her check by command of the city council expressed in the form of an ordinance. While that part of the ordinance directing her to deposit these funds, when so drawn, in a time certificate, was in violation of law and void to that extent, either with or without the ordinance, she was authorized to withdraw this money upon her official order in the form of a check and when this was done it became a closed transaction and the funds were withdrawn from the bank and reposed in the custody of the treasurer and her subsequent act in thereafter making an unlawful investment, in that or in any other depositary, did not bring this second deposit within the terms of the bond. The words "as aforesaid" limit the liability of the obligors to require the bank to account for money that has been lawfully deposited and which has not thereafter been lawfully withdrawn. There is nothing in the terms of the bond that makes the bondsmen *Page 471 
insurers of the city's funds against subsequent misappropriations of this money by the city's officers, after it has been withdrawn in a lawful manner by the proper city officer.
Thus far I have considered the question solely upon the ground that appellants are not liable for the misappropriation of these funds by the joint wrongful action of the city treasurer and the Bannock National Bank when they invested the city's funds in a time certificate and such liability is not within the terms of the surety undertaking. To hold otherwise results in creating a new contractual relation with an additional liability of a higher rate of interest, and also making a contract that permits the city to invest its funds in any of the bank's securities. This change from a lawful deposit to an unlawful investment cannot create a new and different contractual relation between appellants and the City of Pocatello.
"A party who deposits money in a bank on general deposit voluntarily becomes a creditor of such bank and, impliedly, at least, agrees that the bank may commingle such money with its own, and use it until called for by such depositor. The relation of debtor and creditor arises by mutual consent." (State v. Thum, supra.)
It may be stated that this relationship of debtor and creditor arises by mutual consent whether the deposit be a general deposit subject to check, or a time deposit that may only be withdrawn under the terms of the agreement. Neither of these classes constitutes a special deposit, for a special deposit is where the whole contract is that the thing deposited shall be safely kept and the identical thing returned to the depositor. This contract may arise by express agreement or by the nature of the deposit, as if it were gold plate, or money, or securities locked in a box or sealed up in a package. (Morse on Banks and Banking, 5th ed., sec. 183, p. 413.) A special deposit is a delivery of the property, securities, or even money, to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor. The acceptance of a special *Page 472 
deposit imposes no duty on the bank except to keep the deposited article in safety and the deposit has no effect whatever on the title of the money or thing deposited, but the title remains in the depositor. (7 C. J., sec. 630.)
Soon after statehood, this court passed upon the legal relationship that arises out of an unlawful deposit of public money in a bank, in the case of State v. Thum, 6 Idaho 323,55 Pac. 858. Thum was the receiver of Bunting Co., bankers. The state treasurer, at a time when the law required all public officials charged with the safekeeping of public funds to maintain possession of such funds or place them on special deposit, deposited with Bunting Company about $11,000 of state money. In a proceeding by the First National Bank of Pocatello, Bunting Company was declared insolvent and Thum was appointed receiver of such defunct bank. By intervention upon relation of the auditor and attorney general, the state brought an action to have this deposit declared a special deposit and to give the state a preference for the amount that was being carried by the state treasurer in this bank upon general deposit prior to its insolvency. After a thorough and learned discussion of the question, the court declared that "public money deposited by a public officer in a bank, becomes a trust fund, and not a part of the estate of the bank, and, in case of the insolvency of the bank, its receiver must treat such fund as the property of the true owner, and not of the bank." In this discussion, Mr. Justice Quarles states the issue presented as follows:
"The contention of the respondent that public money deposited in a bank on general deposit, by a public officer, in violation of law, becomes the estate and property of the bank, the owner of the money so deposited, contrary to its will, becoming a mere creditor of the bank, raises the principal question in this case."
The ultimate conclusion reached by the court was that:
" The joint wrong and criminal act of the agent of the state and of the officers of the bank does not redound to the financial interest of the creditors of the bank. The bankreceived *Page 473 the money in trust for the true owner, the state. It must beregarded as a trustee."
See, also, First Nat. Bank v. C. Bunting Co., 7 Idaho 27,59 Pac. 929, 1106.
I do not deem it necessary to trace the history of this doctrine, either since or prior to the rendition of these opinions. The rule announced has been so often reaffirmed in this court and its beneficent effects on the public interests are so apparent that I do not apprehend there is even a probability that this court will depart from the doctrine of those cases unless the statute law be changed. I accept this as a correct rule of law controlling this case and all other cases of a kindred nature. Then so far as this court is concerned, it is irretrievably fixed, as a rule of substantive law, that whenever public funds are deposited in a bank contrary to the acts of the legislature defining the manner in which such deposits or investments shall be made, such unlawful attempt results in the creation of a trust in such fund on behalf of the depositing unit; and no title to such fund passes but remains in the depositing unit. If such depositary has intermingled or disposed of that which has been wrongfully deposited or invested, then the courts are bound to declare a trust in favor of the depositing unit against all of the estate of the bank with a preference as against all other creditors equal to the money value of whatever has been so deposited or invested.
No argument or authority is necessary in support of the proposition that the relationship between a trustee and acestui que trust is not a contractual relationship that arises out of a mutual agreement of the parties. On the contrary, the rights and obligations of the parties are created by operation of an equitable principle of law, and the meeting of the minds of the parties has nothing to do with the creation of the liability on the part of the trustee or of the beneficial interest of the cestui que trust. In the instant case we must hold that the unlawful act between the city authorities of Pocatello and the Bannock National Bank in depositing $32,000 of the city's money on a time certificate *Page 474 
of deposit, created a contractual relation between the city and the bank and passed the city's title to this money to the bank, or hold that such unlawful act created the relationship of trustee and cestui que trust, with title remaining in the city. It is impossible that both conditions can arise out of such a transaction.
The act in all of its essentials was equivalent to the city's officials investing city funds in the securities of this bank. They might as lawfully have purchased its stock, any of its bills receivable, or any other asset which the city's officers believed was a good investment. If such an act can be upheld, all restrictions are removed with regard to how officials may invest funds belonging to the public. The amendment to C. S., sec. 4046, was passed in 1919. (Sess. L. 1919, p. 371.) Prior to this the city was without power to invest in the class of securities enumerated in this amendment, that is, government bonds and bonds of the state, etc. It is therefore idle to contend that a city or village has ever had authority to invest its funds in the assets of a bank or otherwise than as provided by this statute.
The City of Pocatello, loaning this $32,000 of its funds to this bank, upon its note in the form of a time certificate, was wholly unauthorized, in violation of law, and the title to this money never passed to the bank but resulted in creating a trust. Appellants' obligation to the city arises solely by virtue of a contractual obligation, the surety bond which they executed. This relationship cannot be materially altered or the terms of the agreement extended by the bank and the city without the consent of appellants.
We must either adhere to the rule announced in State v. Thum,supra, and First Nat. Bank v. C. Bunting Co., supra, that the title to the money remained in the city and gave it a preference right against the estate of the defunct bank, or that the title passed to the bank and the relationship of debtor and creditor continued to exist with regard to this money placed upon time deposit. This latter view would result in the law, as announced in those cases, being no longer available to protect public funds wrongfully deposited. *Page 475 
I am of the opinion that this court should not overrule or in any manner modify the law as expressed in those cases and that public funds should continue to be protected under this rule where such funds have been deposited or invested contrary to law, whether there be a sufficient indemnifying bond or not.
As supporting the rule announced in these cases, see the following: Watts v. Commissioners of Cleveland Co.,21 Okl. 231, 95 P. 771, 16 L.R.A., N.S., 918; Myers v. Board ofEducation, 51 Kan. 87, 37 Am. St. 263, 32 P. 658; Fire Water Commrs. v. Wilkinson, 119 Mich. 655, 78 N.W. 893, 44 L.R.A. 493; San Diego Co. v. California Nat. Bank, 52 Fed. 59;The Ind. District of Boyer v. King, 80 Iowa, 497, 45 N.W. 908;Yellowstone Co. v. First Trust Savings Bank, 46 Mont. 439,128 P. 596; Board of Commrs, v. Strawn, 157 Fed. 49; State v.Midland State Bank, 52 Neb. 1, 66 Am. St. 484, 71 N.W. 1011.
The only authorities to which my attention has been called or that I have been able to find supporting the contrary view, are two Minnesota cases: Board of Commrs. v. Security Bank,75 Minn. 174, 77 N.W. 815; Commissioners v. American Loan TrustCo., 75 Minn. 489, 78 N.W. 113.
Some confusion seems to have arisen because of the language employed in some of the later decisions in this state that rely upon the rule as first announced in these earlier cases. I think the correct rule of these cases is that any attempt to place public money in a bank on general deposit when the officer is without statutory authority to do so is ineffectual to create the ordinary relationship of bailor and bailee, but does create the relationship of trustee and cestui que trust, with a preference right to recover against the entire estate of the trustee in case of insolvency, the title to the money or other things attempted to be deposited remaining in the cestuique trust and the right being enforceable only in equity. Public funds in the hands of an officer charged with their safekeeping, where there is no law authorizing a general deposit, may lawfully be placed in a *Page 476 
bank or other depositary for safekeeping, as a special deposit, thereby creating the relationship of bailor and bailee that gives rise to any suitable action at law for the recovery of such deposit in case it is not returned upon proper demand. (Young v. Mercantile Co., 140 Fed. 39.)
I concur in that part of Mr. Justice Budge's opinion, holding: "That in the instant case the time deposit of $32,000 waterworks fund money of the city of Pocatello with the Bannock National Bank is not within the undertaking of the sureties upon the bond in suit; that the bank never acquired title to said deposit, and that a right to the recovery thereof on behalf of the city does not exist as against appellant sureties."