## WARD v FULTON

Ohio Appeals, 7th Dist, Monroe Co

Decided Dec 9, 1931

POLLOCK, J.

The first claim of defendant is that the bond given by The Monroe Bank to secure the deposit of County funds, beginning on June 1st, 1928, protected the funds that were deposited in said bank after the 1st day of June, 1931, until the undertaking of a successor was accepted by the Commissioners; and that, as these funds were protected by the depositor's bond, they were legally deposited in said bank, and the County is only a general creditor of the bank.

This requires a construction of several sections of the Code referring to the deposit of County funds in depositories.

Sec 2722 GC provides, in substance, that no award shall be binding on the county, nor shall money of the county be deposited thereunder until the security therefor is given, as required by the Code.

Sec 2723 GC requires the undertaking to be conditioned for the receipt, safe-keeping and payment-over of all money with interest thereon, at the rate specified in the proposal which may come into its custody under and by virtue of this chapter, and under and by virtue of its proposal and award by the Commissioners, and for the faithful performance by such bank or trust company of all the duties imposed by law upon the depository.

The next section provides for, if necessary, the increasing of the bond, or, in case of a reduction in the deposit, of a release and surrender of a part of the undertaking, but not less than the sum on deposit.

The next section, §2725, GC, provides for a release and cancellation of the security by a ten days notice to the county commissioners, county auditor, and county treasurer, but no cancellation shall operate or relieve any surety of liability for the deposit made before such notice was given, until such deposits are secured to the satisfaction of the county commissioners, as evidenced by resolutions spread on their journal, or until such deposits are returned to the county treasurer.

The next section which we need now refer to is §2729 GC, which provides as follows:

"Upon the acceptance by the commissioners of such undertaking, and upon the hypothecation of the bonds as hereinafter provided, such bank or banks or trust companies shall become the depositary or depositaries of the money of the county, and

remain such for three years or until the undertaking of its successor or successors is accepted by the commissioners."

It is claimed by the defendant that under the latter provision of this section, that the undertaking given by the depository continues to protect deposits made after the expiration of the term for which the bond is given, until its successor is accepted by the commissioners.

The question to be determined is whether this is the proper construction to place upon this section, read in the light of the provision of the former sections. §2722 GC makes it illegal for the treasurer to deposit any money in a depository named by the county, until after the security required is given.

The next section provides for the condition of the bond, and the bond given by The Monroe Bank in June, 1928, practically followed the condition required in this section.

The condition required by this section does not provide for a bond conditioned to secure funds deposited by the Treasurer after the expiration of the time provided by the award of the deposit. If the condition of the bond is extended to cover deposits made after the expiration of the term for which it was given, it is by virtue of the provisions of §2729, GC.

The bond given by The Monroe Bank and the provision of §2723 GC does not extend the liability of the bond to funds deposited after the expiration of the period. It will be noticed that §2725 GC provides for the release of the security on such bond by giving ten days notice, as therein provided. But such surety are not relieved under that section from their liability at the end of the ten days, unless a successor, or rather, a succeeding bond is given, or the money withdrawn from the depository.

We think that the provisions of §2729 GC, "Or until the undertaking of its successor or successors is accepted by the commissioners" is only intended to secure any County funds that may remain in the depository after the ten day period, upon the release of the sureties under §2723 GC, and, also, any County funds that are not withdrawn from the depository at the close of the period of the award.

The section does not use the word "and," but "or until the undertaking of a successor," which clearly indicates that this latter provision does not extend the condition of the bond, but refers to a condition that may take place prior to the three year period, and not after the three years. For this reason, we think that this provision refers to the condition that may take place, under the provisions of §2728 GC, or to funds that may be in the bank at the close of the three years, and does not extend the bond to County funds deposited after the three years award.

Under this holding of the court, the deposit of the County money in The Monroe Bank, after the first of June, 1931, was illegal. The treasurer had no. right to deposit, there being no bond given as required, and the bank had no right to accept the deposit, knowing that it had not complied with .the provisions of the Code.

The question then occurs whether the deposit of County funds by the treasurer illegally, in the bank, and received by such bank illegally, creates a constructive or resulting trust.

The right to recover, as a preferred claim, public money deposited by public officials in banks, which afterward become insolvent, is not in unanimity in all of the courts of this country. In fact, there is a very great difference in the judicial holdings in the several states of. this country on such conditions. The great weight of authority, where the funds are deposited illegally and received by the bank knowing of the illegal deposit, is that the bank receives such funds as a constructive or resulting trust.

Page County v Rose, 106 NW, 744-745;

St. ex Anderson v Thum, 55 Pac., 858;

Bank of Pocatello v Bunting & Co., 59 Pac., 929;

City of New Hampton v Leach, 207 NW, 348;

Adams v Farmers State Bank, 222 NW, 576;

Andrews v Farmers Trust Co., 21 SW, 2 Ed., 641;

Patek v Patek, 35 L.R.A. (N.S.), 461;

McLeod v Evans, 57 Am. St. Rep., 332;

Myers v Board of Ed., 37 Am. St. Rep., 263;

Such was the holding in the Federal Court under statutes of this State.

In the case of **Commissioners of Crawford County v Strawn, Receiver of the Galion National Bank, 6 OLR,** 309, the Cashier of the bank, acting as a legally appointed deputy of the County, had collected taxes, and entered the amount in the name of the Treasurer of the county in the general deposit of the bank. This was illegal; the Treasurer had no right to permit the funds of the County to be deposited in the bank. In the opinion, on page 311, the Court says:

"Under the settled doctrine the bank acquired no title to the public funds, and the public can recover the same so far as it can be identified, or traced into the property which has come into the receiver's possession."

In the case of **Smith, Trustee v Fuller, Assignee, 86 Oh St, 57,** the court had before it the question whether trust funds deposited in a certain way, in a bank which afterward becomes insolvent, could be declared a preferred claim.

In the third proposition of the syllabus, the court says:

"A general deposit by such trustee of trust funds in a bank is in legal effect a loan to the bank, and unless authorized by the court is a violation of the duties of the trustee."

And Judge Spear in the opinion on page 65, says:

"The insistence of counsel for defendants in error that the authorities cited by plaintiffs in error are predicated upon some tortious act of the trustee, performed or threatened, or some misapplication of the trust fund has not been overlooked. Those cases concede and the counsel concede that where the deposit is wrongful, the relation merely of debtor and creditor between the bank and the trustee does not arise."

We think from these authorities that the trend of the decisions in this State is that where public funds are deposited by the custodian thereof, illegally, in a bank, and the bank becomes insolvent, the public funds become a preferred lien so far as they can be traced.

We then come to the further question, to what amount is the County entitled to a preferred lien on the assets of this bank in the hands of the defendant.

These funds were received by The Monroe Bank from the County Treasurer, and mingles with the other general funds of the bank, and used in its banking business as general funds.

The Supreme Court of this State, in Smith v Fuller, supra, said in the 5th syllabus:

"Where, in such case, the bank fails and makes an assignment for the benefit of creditors before such fund is withdrawn, and it appears that the bank, upon receiving such deposit, had mingled the trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its own money, and not from the trust fund. And it be shown that at all times from the making of the deposit to the time of the assignment by the bank, there was in its vaults money of amount and value equal to the money so deposited, a court of equity may engraft a trust upon such money and the trustee will become a preferred creditor to the amount of such deposit."

The preferred claim can only include the money that was in the vault of the bank at the time the bank was taken over by the defendant, which was the 3rd of October, 1931.

It is further insisted by plaintiff that this should also include the funds deposited in the other designated depositories, under the provision of §710ff GC, providing and requiring under these provisions certain proportion of the deposits of a bank to be in reserve depositories.

Under holdings of the courts in some other jurisdictions, the preferred lien would reach such funds, and, in fact, under some of the jurisdictions of this country, it would include assets of the bank, but that is not the decision of the Supreme Court of this State, so far as it has decided this question. The preferred claim of trust funds is "limited to the money in the vault."

The money in the other depositories was, of course, required to be kept there by the Code of this State, but it may be made up from money borrowed, perhaps was, from these depositories, or any general fund or collections sent to the depository by The Monroe Bank. The funds of the County cannot be traced to these depositories any more clearly than it can be traced to any other depository in which The Monroe Bank had money deposited at the time of closing its doors, or, in fact, in any other investment of The Monroe Bank at that time.

For this reason, we think that the only funds of The Monroe Bank in the hands of the Superintendent of Banks for liquidation, upon which a trust in favor of the County can be declared, is the money that was in the vault of the bank at the close of business on Oct. 2d, 1931, which was $10,328.14. Judgment can be drawn accordingly.

Motion for new trial filed, overruled and exceptions noted.

ROBERTS and FARR, JJ, concur in the judgment.