BEARD v. INDEPENDENT DIST. OF PELLA CITY.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1898.)

No. 1,052.

1. FEDERAL AND STATE COURTS—TRUST FUNDS IN INSOLVENT NATIONAL BANK
—RULE OF PROPERTY.

The right to fasten a special trust upon funds held by the receiver of an insolvent bank in Iowa not having been created by any statute of that state, but depending upon the general principles of law and equity applicable to the circumstances, decisions of the supreme court of that state in relation thereto, if not in accord with the decisions of the supreme court of the United States or the decided weight of authority, do not constitute a rule of property binding on the federal courts.

2. INSOLVENT BANKS—FOLLOWING TRUST FUND.

In order that a trust fund may constitute a preferential claim against the funds of a national bank in the hands of a receiver, it must appear that these funds were actually augmented by the receipt of the trust fund. And if the trust fund was created merely by a check on the same bank drawn by a general depositor in favor of the trustee, the amount of which was then shifted to the latter's credit, there is no right to a preference.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

This was a proceeding in equity instituted by the independent district of Pella city against R. R. Beard, receiver of the First National Bank of Pella, for the purpose of compelling the receiver to recognize as a trust fund, and pay in full, the amount of a balance deposited by the treasurer of the district. There was a finding and decree in favor of complainant in the circuit court, and the receiver appeals.

A. B. Cummins, for appellant.

P. H. Bousquet, I. M. Earle, and S. F. Prouty, for appellee.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. From the record in this case it appears that for some years prior to June, 1895, the First National Bank of Pella, a corporation created under the provisions of the act of congress known as the "National Bank Act," carried on at Pella, Iowa, a banking business until about June 1, 1895, when it was declared to be insolvent, and R. R. Beard, the appellant, was duly appointed receiver thereof by the comptroller of the currency. It further appears that for years previous to the appointment of the receiver the treasurer of the independent school district of Pella city had been in the habit of depositing the funds of the school district in the named bank; the account on the books of the bank being headed, "Treasurer of Independent School District." The moneys thus deposited were not received by the bank as a special deposit, but were treated the same as the moneys paid in by other depositors; being intermingled with the general funds of the bank. When the bank failed, and was placed in the hands of a receiver, the account showed a balance due to the treasurer of the school district of $4,676.25; and thereupon the independent district brought this proceeding in equity for the pur-

pose of compelling the receiver to recognize the amount as a trust
fund belonging to the district, and to pay the same out of the moneys
in his hands before paying any dividends to the creditors of the bank,
—it appearing that the cash assets of the bank coming into his hands
on June 1st amounted to $8,729.93.    Upon the hearing in the circuit
court it was decreed that complainant was entitled to the relief
sought, and that the receiver must pay the amount due the independ-
ent district before making a dividend to the other creditors; and
the receiver now seeks a reversal of the decree thus entered.    The
grounds for the conclusion reached by the trial court are very fully
and ably set out in the opinion handed down, and reported in 83 Fed.
5, in the course of which the leading cases upon the question of the
right to follow and recover trust funds are cited and commented on;
and the conclusion is reached that there exists a conflict between
the rulings of the supreme court of Iowa and the current of authority
in the courts of other states and of the United States, and that, if
free to view the question on its merits, the ruling would be against the
right to a preferential claim existing in the school district, but, in
deference to the rulings of the supreme court of Iowa, the court would
hold the right to a preference to be established.

The only provision of the statutes of Iowa which is involved in this
case is section 1747 of the Code of Iowa of 1873, which enacts that:

"The treasurer shall hold all moneys belonging to the district and pay out
the same on the order of the president, countersigned by the secretary, and
shall keep a correct account of all expenses and receipts in a book provided for
the purpose."

Construing this section, the supreme court of Iowa holds that un-
der its provisions the treasurer of a school district holds the money
of the district as a trustee; that he is not authorized to deposit the
same in a bank, and by so doing the character of the fund is not
changed, and the right exists in the district to follow this trust fund
and assert title thereto.    District Tp. v. Morton, 37 Iowa, 551; Dis-
trict Tp. v. Smith, 39 Iowa, 10; District Tp. v. Hardinbrook, 40 Iowa,
130; Independent Dist. v. King, 80 Iowa, 497, 45 N. W. 908.    The stat-
ute does not deal with the question when, and under what circum-
stances, a right to a trust fund can be successfully asserted against
the rights of third parties.    All that is established by the construc-
tion of the statute by the state supreme court is that under its pro-
visions a district treasurer holds the school funds as a trustee, and
that he has no legal right to deposit the funds in a bank; but the
statute does not undertake to declare that if the money is thus depos-
ited, and is intermingled with the general funds of the bank, the
right of the school district to payment out of the general fund is
paramount to the rights of all other creditors.    If such right exists,
it is not created by the statute, but is based upon the general princi-
ples of law and equity applicable to the circumstances; and the rul-
ings of the supreme court of Iowa are not conclusive upon the latter
question, nor can it be rightfully said that they constitute a rule
of property which other courts are bound to follow; and while we con-
cur with the trial court in the general views expressed, touching the
desirability of avoiding conflicting decisions between the state and

federal courts, we cannot agree with the learned judge below in holding that this consideration requires a decision of the question involved in this case in accordance with the rulings of the supreme court of Iowa, if the same are not in accord with the rules laid down by the supreme court of the United States, or established by the decided weight of authority in the cases decided by the courts of other states. We must not lose sight of the character of this proceeding. The First National Bank of Pella was created under the laws of the United States; and its powers, rights, duties, and obligations, so far as they are dependent upon statutory enactment, are derived from the acts of congress, and not from the statutes of Iowa. Becoming insolvent, the bank was put into liquidation under the provisions of the act of congress, and the receiver was appointed by the comptroller of the currency; and, under the authority conferred on him by the statutes of the United States, he has taken possession of the assets of the bank, and in the distribution thereof he is controlled by the laws of the United States. The present bill was filed by the complainant against the receiver in his official capacity, and for the purpose of establishing a preferential claim on the assets of the bank in his hands, in favor of complainant; and the real question is whether the receiver is bound to obey the law as laid down by the supreme court of the United States, or by the supreme court of Iowa, upon the point at issue, assuming for the moment that these courts are at variance thereon. The argument in favor of uniformity of decision, upon which reliance was placed by the trial court, makes in favor of uniformity of ruling among the courts which may be called upon to direct the distribution of the assets of insolvent national banks, which can only be secured by following in all cases the rule laid down by the supreme court of the United States. The question for decision is, what rule should be followed by a receiver of a national bank in distributing the assets of the bank, which have come into his hands under the provisions of the laws of the United States, in cases wherein it appears that trust funds have been received by the bank in the course of its business? The general question of the right to follow trust funds was fully considered by Mr. Justice Bradley in Frelinghuysen v. Nugent, 36 Fed. 229, and the conclusion reached was stated as follows:

"Formerly the equitable right of following misapplied money or other property, in the hands of the party receiving it, depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it was held, as the better doctrine, that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over other creditors of the possessor."

Counsel for appellant and appellee concede that the foregoing extract from the opinion of Mr. Justice Bradley fairly states the rule recognized by the supreme court of the United States, which in Peters v. Bane, 133 U. S. 670, 10 Sup. Ct. 354, quoted the same approvingly;

and, without further citation of authorities, we may accept the same as a succinct statement of the rule now in force in the courts of the United States.

It is claimed that the supreme court of Iowa has extended the rule as above stated, by holding that where trust funds have been intermingled with the general assets of an insolvent estate, thereby increasing the amount thereof, the person to whom the trust funds belong has a preferential lien, not only upon the specific fund into which it is traced, but upon the general assets of the insolvent estate; and, in support of this claim, reliance is placed on the cases of Independent Dist. v. King, 80 Iowa, 498, 45 N. W. 908, and Dist. Tp. of Eureka v. Farmers' Bank, 88 Iowa, 194, 55 N. W. 342. It cannot be questioned that the general language found in the opinion in the former case gives support to the contention that it was intended to lay down the broad proposition that, as against the general creditors, the owner of a trust fund passing into the hands of another who becomes insolvent, will have a preferential lien upon the estate of the insolvent; but the decision in the subsequent case of Dist. Tp. of Eureka v. Farmers' Bank, supra, clearly shows that such is not the doctrine intended to be enunciated by that court. In the latter case one Taylor was carrying on a banking business under the name of the Farmers' Bank of Fontanelle. On the 10th day of December, 1890, the bank being insolvent, Taylor made a general assignment for the benefit of creditors. It appeared that the treasurer of the school district for some years had deposited the money of the district in Taylor's bank; there being to his credit, when the assignment was made, the sum of $2,303. The school district brought suit in the district court of Adair county, asking that the amount be declared to be a trust fund, and be decreed to be a preferred claim against the property transferred to the assignee of the owner of the bank by the deed of assignment, and the district court entered a decree providing for the payment of the trust money out of any funds which should come into the hands of the assignee. Upon appeal the supreme court reversed the decree in this particular because it appeared that the deed of assignment conveyed to the assignee real property, to the acquisition of which the money of the school district had not contributed, and in the course of the opinion it is said:

"In Independent Dist. v. King, 80 Iowa, 498, 45 N. W. 908,—a case in many respects like this,—the identical money deposited was not shown to have been delivered to the assignee; and it was said that, if a trust for the amounts deposited were established, 'it must be on the ground that the deposits must be held to have increased the estate of the insolvents, and that the balance due is represented by an increase now in the hands of the assignee.' * * * It is insisted, however, that the trust fund has been traced into the estate of the insolvent, which is in the hands of the assignee. We do not think it is necessary to trace the deposit into any specific property in the hands of the assignee, in order to establish a trust, but it should be shown—presumptively, at least—that the estate in his hands has been augmented by the trust fund. The equities of plaintiff, as against property to which its money contributed nothing, directly or indirectly, are no greater than those of the general creditor."

Thus we have in this case a construction of the opinion given in the earlier case of Independent Dist. v. King; and it is made clear,

beyond question, that the supreme court of Iowa does not hold the rule that a trust fund may be declared to be a preferential lien upon the entire estate of an insolvent, into whose hands the trust fund may have come, but such preferential lien will be held to exist against any fund or property coming into the hands of an assignee, the amount or value of which has been augmented by reason of the trust fund coming into possession of the assignor. It is difficult to see wherein the rule thus enunciated and applied by the supreme court of Iowa differs from that recognized by Mr. Justice Bradley in Frelinghuysen v. Nugent, supra, and approved by the supreme court, to the effect that confusion with other like property, as by intermingling money in a common fund, does not destroy the equity, but converts it into a charge upon the entire mass with which the trust fund has been confused. The foundation of the right on part of the owner of a trust fund to a preference over general creditors in payment out of a fund or estate that has passed to the assignee or receiver of an insolvent person or corporation is, that the trust fund has been wrongfully confused or intermingled with the property of the insolvent, or has been used to increase the value of property, thereby increasing the amount or value of the funds or estate passing into possession of the assignee or receiver; that, if this intermingling had not taken place, the fund passing to the receiver would have been so much less; that the creditors have only the right to subject the property of the debtor to the payment of their claims, and therefore the creditors cannot complain if the total fund coming into the hands of the receiver is reduced by the amount necessary to make good to the owner of the trust fund the sum which was wrongfully used in augmenting the fund or property passing to the receiver. Unless it appears that the fund or estate coming into possession of the receiver has been augmented or benefited by the wrongful use of the trust fund, no reason exists for giving the owner of the trust fund a preference over the general creditors, and this we understand to be the doctrine recognized by the supreme court of Iowa and the supreme court of the United States alike.

In the bill filed in this case it is averred that when the bank closed its doors it had on hand cash to the amount of $8,000, which passed into possession of the receiver; it being further averred that the trust money belonging to the school district, and amounting to $4,676, formed part of this cash fund. Upon this question of fact the rights of the complainant depend. If this fund, coming into possession of the receiver as part of the assets of the insolvent bank, includes the money belonging to the school district, then the district is entitled to a preference in payment therefrom over the creditors of the bank; but, unless it appears that this fund does include such trust fund, the right to a preference does not exist. The evidence shows that when the bank closed its doors, on June 1, 1895, all the money credited on account to the independent district had been drawn out, and the balance of $4,676, claimed to be due, grows out of two credits entered on the account,—one for $614, under date of May 6, 1895, and one for $4,340, under date of May 13, 1895; and it is admitted that these entries do not represent cash then actually paid

into the bank, but represent checks given on the bank itself, the amount of each being charged on the books of the bank against the drawer of the check, and then entered to the credit of the treasurer of the school district. The check for $4,340 was drawn by the treasurer of Marion county in favor of the treasurer of the school district, and represented taxes collected for school purposes for the benefit of the independent district of Pella. The account kept with the treasurer of the independent district, on the books of the bank, shows that money was drawn out of the bank from time to time for the use and benefit of the school district; and it further appears that were it not for the credit given by reason of the two checks drawn May 6th and May 13th, and aggregating $4,954, the account would have been overdrawn, and the treasurer of the district would have been in debt to the bank in the sum of $614. It thus appears that the balance of $4,676 now claimed by the school district is not composed of money actually paid into the bank on May 6th and 13th, whereby the cash assets of the bank were increased to that extent, but this balance is made to appear to be due to the school district by entries upon the books which neither increased nor diminished the cash held by the bank. That this is true will appear from an examination of the daily balance book of the bank, which is in evidence. This shows that on the 11th of May the total cash held by the bank amounted to $7,949, and the amount then to the credit of the school district was $707. May 12, 1895, being Sunday, no entry appears for that day. On May 13th the cash balance was $8,436, or an increase of $487 over the amount on hand on Saturday, May 11th. The amount to the credit of the school district on the 13th was $5,047, or an increase over the amount on Saturday, May 11th, of $4,340,—just the amount of the check drawn by the treasurer of Marion county on the bank, and by it credited to the account of the school district; but the amount of cash held by the bank was not increased by this amount, but remained at just the figure it would have shown if this interchange of credits between the treasurer of Marion county and the treasurer of the school district had not taken place. Under these circumstances, can it be successfully maintained that the cash fund coming into the hands of the receiver has been augmented by the addition thereto of a trust fund belonging to the school district, which may be subtracted from the fund without infringing on the rights of the general creditors? The relation existing between the bank and the treasurer of Marion county was simply that of debtor and creditor. In order to pay the amount of taxes due to the school district, the treasurer of the county drew his check on the bank for the sum of $4,340, and delivered it to the treasurer of the school district. The fund on which the check was drawn was not a trust fund, and the delivery of the check to the treasurer of the school district did not change the character of the account against which it was drawn. If, after the acceptance of the check by the treasurer of the school district, but before its presentation, the bank had failed and closed its doors, it could not be claimed that the bank held the sum in trust for any one. The only obligation resting on the bank was to pay the check on presentation, and, if not paid, the bank would be indebted

for the amount, not as a holder of a trust fund, but as an ordinary debtor. It is claimed in argument that the court must treat the case just as though the treasurer of the school district had presented the check, had obtained the money thereon, and had then deposited the money in the bank as the money of the school district, but this was not in fact done; and as against the creditors, whose money in fact created the cash amount coming into the hands of the receiver, why should fiction be resorted to in order to sustain a preference on behalf of the school district to payment out of a fund not augmented in fact by any sum belonging to the district?

The object of the bill filed in this case is to obtain a preferential payment of the sum of $4,976 out of the cash fund coming into the hands of the receiver as part of the assets of the bank, and the foundation of the right to a preference is the claim that this fund had been augmented and increased by the addition thereto of a trust fund belonging to the school district. The evidence clearly shows that if the treasurer of the school district had never deposited a cent in the bank, or had closed his account therewith on the 5th day of May, 1895, the sum of money coming into the hands of the receiver on June 1st would have been just the same that did in fact come into his hands; and the evidence therefore does not prove that the cash fund in the hands of the receiver has been augmented or increased by the addition thereto of a trust fund belonging to the school district. If the evidence showed that there had been in the hands of the treasurer of the school district a sum of money which he in fact placed in the bank as an addition to the cash fund which subsequently passed into the hands of the receiver, the school district could make claim to this amount as a trust fund, without being required to prove the methods by which the money came into the hands of its treasurer; but, as the evidence in this case clearly shows that the cash fund coming into the receiver's hands does not include any cash actually paid into the bank by the treasurer of the school district, the complainant, in order to show that it has any claim against the bank, is compelled to avail itself of the action of its treasurer in accepting from the treasurer of Marion county a check drawn on the bank, and against an ordinary account, not containing trust funds, and in having the amount of the check credited to the treasurer of the district. If the treasurer of the district had presented the check to the bank for acceptance, and it had been accepted or certified as good by the bank, but before payment the bank had failed, certainly, if the school district desired to avail itself of a claim against the bank, it could only do so by assuming the position of its treasurer, which would be that of a creditor of the bank, holding an accepted or certified check. It certainly could not assert that the accepted check had become a trust fund, which must be paid in preference to the debts due other creditors. By accepting the check, the bank would bind itself for the payment of the amount thereof; and. in effect, that was all that was done in this case, in that when the check was drawn the amount thereof was credited up to the account of the treasurer of the school district, and by so doing the bank acknowledged the check to be good, and became bound to pay the amount thereof when called

for by the treasurer of the district. The school district can wholly ignore all these dealings between its treasurer and the bank, and, under the decisions of the supreme court of Iowa, can hold its treasurer and his sureties for the amount of school funds coming under his control; but when, as in this case, the school district endeavors to establish a claim against the bank, it ought not to be allowed to avail itself of the benefit of the transactions between its treasurers and the bank, but avoid their obligations. This case is not one wherein it is made to appear that the school treasurer and the bank were in collusion to commit a fraud upon the district, and the actual contest is between the school district and the general creditors of the bank. It is open to the school district to assume the position occupied by its treasurer, and, by acknowledging his acts, become a creditor of the bank for the balance shown to be due to the school treasurer; but when the district attempts to avoid the position of a creditor, and to assume that of the owner of a trust fund, and as such to assert a preferential right to payment in full out of the cash fund coming into the hands of the receiver, to the detriment of the general creditors, it ought to be held to satisfactory proof of the fact upon which the right to a preference rests, to wit, that the fund coming into the receiver's hands has been augmented and increased by the addition thereto of the trust money, not as a matter of inference, nor as a result of mere entries on books of account, but because the fund or property against which the preference is sought to be enforced has been in fact augmented or benefited by the addition thereto of the trust fund.

To illustrate the situation, let it be assumed that on the 13th day of May, when the check of the treasurer of Marion county was entered upon the books of the bank to the credit of the treasurer of the district, there was no cash then in the bank. Certainly the drawing of the check, and the entry thereof to the credit of the school treasurer, would not have placed in the hands of the bank any cash whatever; and, had the bank then closed its doors, it would be true that the school district could assert, as against the bank, that the amount due it was a trust fund, yet it would be but a barren claim, because there would be no fund in the hands of the receiver against which a preferential claim could be asserted. Assume, however, that, before the bank closed its doors, some third party had made a deposit of $5,000 in cash, and this sum had passed to the receiver, as part of the assets of the bank; would a court of equity be justified in holding that under such circumstances the school district could assert a right to payment in full out of this fund, to the exclusion of the creditor of the bank who had created the fund by depositing it in the bank? In the supposed case it would appear, beyond question, that the trust funds belonging to the district had not aided in creating or augmenting the cash fund coming into the receiver's hands, and clearly it would be inequitable to give preference to the claim of the school district over that of the party whose money had in fact created the fund. In substance, that is the situation disclosed by the evidence in this case. As already stated, on the 5th day of May, 1895, the treasurer of the school district had no funds in the hands

of the bank, but, on the contrary, the account was overdrawn. On the 6th and 13th days of May, credits on the account were entered, of checks drawn on the bank, which did not add one dollar to the cash in hand or other assets of the bank. The cash fund which passed into the receiver's hands is the balance of the funds on hand on May 5th, of which no part belonged to the school fund, the treasurer's account being then overdrawn, and the cash paid in since May 5th, less the amount paid out; all of the cash paid in coming from sources other than from the treasurer of the school district. It is not sufficient for complainant to show that the account carried on the books of the bank under the heading, "Treasurer of the Independent School District," represented a trust fund, and that the amount shown to be due thereon from the bank was increased by crediting up the checks of the county treasurer. The point at issue is not between the school district and the bank, but it is between the school district and the creditors of the bank, represented by the receiver; and, to entitle the school district to enforce a prior equity or claim against the cash fund in the hands of the receiver, it must prove that this fund has been augmented by the addition thereto of trust funds belonging to the district, and, for the reasons stated, we hold that this has not been done; and therefore complainant is not entitled to a priority of payment out of the funds in the receiver's hands, nor to a prior lien upon the general assets of the bank. The decree appealed from is reversed, and the case is remanded to the circuit court with instructions to dismiss the bill on the merits.