## In re BERRY et al.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

### No. 259.

1. TRUSTS—CONSTRUCTIVE TRUST—PAYMENT OF MONEY—MISTAKE OF FACT —RECOVERY.

Petitioners under a mistaken belief that they were indebted to B. & Co., on November 25th paid them $1,500, which they did not owe, in response to a demand from B. & Co. for money on certain stock transactions. On the 26th, B. & Co. made a general assignment for the benefit of their creditors, and on the 28th a petition in bankruptcy was filed against them. The money so paid was deposited to the credit of B. & Co.'s bank

account which from that time contained a balance largely in excess of such amount which was finally paid to B. & Co.'s trustee in bankruptcy. *Held* that the money having been paid under mistake of fact, was recoverable on petition against the trustee.

2. TRUSTS—CONSTRUCTIVE TRUSTS—PAYMENT OF MONEY.

Where bankrupts deposited money which they had received from petitioners under a mistake of fact to the credit of their general bank account, and though subsequent to such deposit and prior to the intervention of bankruptcy, withdrawals were made from the account, the balance was never below the amount which they received through mistake, it would be presumed that the amounts withdrawn were not those impressed with the trust, and that so long as the bankrupt's account equalled or exceeded the amount erroneously received that such amount constituted the trust fund.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York, in Bankruptcy.

On petition, filed by the trustees in bankruptcy of Jacob Berry & Co., bankrupts, to review an order of the District Court for the Southern District of New York, dated October 18, 1905, directing said trustees to pay to Raborg & Manice $1,500 and costs from the funds in their hands as trustees.

James N. Rosenberg and Robert P. Levis, for trustees.
Benjamin N. Cardozo, for Raborg & Manice.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. Raborg & Manice, during all the time in question, were brokers on the New York Stock Exchange and Berry & Co., the bankrupts, were also brokers on the Consolidated Stock Exchange, in the same city, and had an active speculative account with Raborg & Manice.

On November 11, 1904, by virtue of a sale of stock made by Raborg & Manice for Berry & Co., the latter received a credit of $2,675 on the books of the former and on the same day the money was paid over to Berry & Co. On November 14, 1904, through a mistake of the bookkeeper of Raborg & Manice, the said amount of $2,675, was again credited to Berry & Co., but the mistake was not discovered until after their failure, on November 26, 1904, when they made a general assignment for the benefit of their creditors. On the day previous, November 25th, between 2 and 3 o'clock in the afternoon, in response to a demand for "some money" by Berry & Co., Raborg & Manice, after consulting the books and learning from the bookkeeper that there was a balance of about $2,500 due, drew two checks for $1,000 and $500, respectively, and sent them by messenger to Berry & Co., who deposited them about 3 o'clock to their credit in the Hanover National Bank. On November 28, 1904, a petition in bankruptcy was filed against Berry & Co. by their creditors.

There is no dispute as to the fact that through a mistake in bookkeeping, growing out of the failure of Berry & Co. to deliver certificates on their stock sale which were a good delivery on the Stock Exchange, a credit of $2,675 was given them to which they

147 F.—14

were not entitled. Relying on this credit the payment of $1,500 was made. The fact was that at the time the balance was the other way, Berry & Co. owing Raborg & Manice the sum of $139. Had the true situation been known the additional payment would not have been made. Stripped of all complications and entanglements we have this naked fact that Raborg & Manice by mistake paid Berry & Co. $1,500, which they did not owe and which Berry & Co. could not have retained without losing the respect of every honorable business man.

It is conceded on all hands that had not insolvency and bankruptcy intervened Raborg & Manice could have recovered the money on an implied assumpsit in the event that Berry & Co. declined to return it after knowledge of the facts—a highly improbable contingency. Of course such an action would lie. On no possible theory could the retention of the money by Berry & Co. be justified; it was paid to them and received by them under mistake, both parties believing that Raborg & Manice owed the amount.

If $1,500 had been placed in a package by Raborg & Manice and delivered to a messenger with instructions to deposit it in their bank, and the messenger, by mistake, had delivered it to Berry & Co., it will hardly be pretended that the latter would acquire any title to the money, and yet the actual transaction in legal effect gave them no better right.

It is urged that to compel restitution now will work injustice to the general creditors of the bankrupts, but this contention loses sight of the fact that the money in dispute never belonged to the bankrupts, and their creditors, upon broad principles of equity, have no more right to it than if the transaction of November 25th had never taken place. If the trustees succeed on this appeal the creditors will receive $1,500, the equitable title to which was never in the bankrupts. There can be no doubt of the fact that the payment to Berry & Co. was a mistake and that by reason of this mistake the trustees have in their possession $1,500 which, otherwise, they would not have. The proposition that Raborg & Manice, who have done no wrong, shall be deprived of their property and that it shall be divided among creditors to whom it does not fairly belong, is not one that appeals to the conscience of a court of equity.

The rule invoked by the District Court is well stated by Judge Story:

"The receiving of money, which consistently with conscience cannot be retained is in equity, sufficient to raise a trust in favor of the party for whom, or on whose account, it was received. This is the governing principle in all such cases. And, therefore, whenever any interest arises, the true question is not whether money has been received by a party, of which he could not have compelled the payment, but, whether he can now, with a safe conscience, ex æquo et bono, retain it. Illustrations of this doctrine are familiar in cases of money paid by accident or mistake or fraud. * * * Still, however, there are many cases of this sort, where it is indispensable to resort to courts of equity for adequate relief, and especially where the transactions are complicated, and a discovery from the defendant is requisite." Story Eq. Jurisdiction, vol. 2, §§ 1255–1256.

See, also, Nat. Bank v. Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Am. Sugar Ref. Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206, 27 L. R. A. 757.

When the money was paid under a plain mistake of fact equity impressed upon it a constructive trust which followed it through the bank and into the hands of the trustees.

The account of Berry & Co. was never overdrawn during the day of November 25th; there was as much as $5,000 to their credit during that day and at no time did the withdrawals reduce the balance below $1,500. It is true that large sums were checked out after the deposit of the $1,500, but the law presumes that the amounts withdrawn were not those impressed with the trust. In other words, so long as $1,500 remained in the bank the presumption is that it was the trust fund.

It is unnecessary to enter further into details of the bank's transactions subsequent to the failure; it is enough to say that as the final result of the bank's liquidation of the account $6,310.-41 was delivered to the trustees in bankruptcy. But for the mistake of Raborg & Manice this sum would have been $4,810.31, which is all the bankrupts' creditors are entitled to. The $1,500 should be paid by the trustees to Raborg & Manice, its lawful owners.

The language of Judge Jenkins in Standard Oil Co. v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739 is applicable to the present situation. At page 402 of 74 Fed., page 475 of 20 C. C. A. (33 L. R. A. 739) he says:

"Here the receiver is an officer of the law, having the assets in custodia legis. He has no interest in the fund, save to see that it shall be distributed among those entitled to it according to the highest principles of honesty and of equity. The assets of the bank received by him are, with respect to the question in hand, to be treated as an entirety. Those assets have been swelled by the property of the appellant wrongfully obtained by the bank, and which went into the possession of the receiver. That in the payment of dividends he has disbursed the actual money so received can make no difference, so long as assets remain out of which restitution can be made. The creditors have received that to which they were not entitled, and that which belonged to the appellant. If restitution be made out of the assets still remaining, the creditors will receive no less than that to which they were originally entitled, and the appellant will only receive that which was its due. To compass such a result is the highest equity, since otherwise the appellant will be deprived of its own, and the general creditors will receive that to which they have no right."

The order of the District Court is affirmed with costs.