AMERICAN CAN CO. v. WILLIAMS.

(Circuit Court, W. D. New York. November 12, 1908.)

No. 120.

1. TRUSTS (§ 353*)—RIGHT TO FOLLOW TRUST PROPERTY—EFFECT OF INSOLVENCY OF TRUSTEE.

The general rule is that trust funds in the hands of an insolvent that have been fraudulently diverted or appropriated can be recovered of the receiver when they are susceptible of identification, and if they have been intermingled with other property rendering them undistinguishable without fault of the trustee a court of equity is powerless to grant relief.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 526; Dec. Dig. § 353.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRUSTS (§ 353*)—FOLLOWING TRUST PROPERTY—EFFECT OF INSOLVENCY OF TRUSTEE.

Where an unlawful appropriation of trust funds by an insolvent results in increasing his general assets, though the trust funds are intermingled with the general funds so as to render their identification impossible, a court of equity will decree priority of payment to the cestui que trust over the common creditors.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 526; Dec. Dig. § 353.*]

3. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—RECOVERY OF TRUST FUNDS.

Where the proceeds of a draft sent to a national bank for collection and remittance were paid to the receiver of the bank on its insolvency, the owner of the draft is entitled to recover the amount thereof.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

• 4. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS.

Where a draft sent to a national bank for collection and remittance was paid by check on another bank, where the check was deposited and the proceeds credited to the collecting bank, the owner of the draft on insolvency of the collecting bank and appointment of a receiver is entitled to recover only the lowest balance to the credit of the collecting bank in the bank on which the check was drawn between the date of the deposit in the latter bank and the appointment of the receiver.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

5. BANKS AND BANKING (§ 287*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS—BURDEN OF PROOF.

In an action against a receiver of a national bank to recover as a trust fund the amount of a draft collected by the bank, the burden of proof is on the owners of the draft to trace its proceeds into the common assets.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 287.*]

6. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS.

Where a draft was sent to a national bank for collection and remittance, and was paid by check, which was deposited in the bank on which the check was drawn and the proceeds credited to the collecting bank, and there was then a sufficient balance in favor of the collecting bank to pay the check, but before the appointment of a receiver of the collecting bank on its insolvency there was a cash withdrawal of an amount, exceeding the amount of the check, though leaving a balance greater than the amount of the check, which balance, however, was extinguished before the appointment of the receiver, the owner of the draft is not entitled to recover its amount out of the general assets.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

7. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS.

Where drafts sent to a national bank were upon depositors in the bank, and the amount thereof was debited to their accounts, no money coming into the possession of the bank by reason thereof, the owner of the draft cannot recover the amount thereof out of the general assets from the receiver of the bank on its insolvency.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

8. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS.

Where a draft sent to a national bank for collection and remittance was paid by a check in favor of the bank, and was indorsed and transmitted to another bank, which credited the amount to the collecting bank, and the check was collected through the clearing house after the appointment of a receiver of the collecting bank on its insolvency, the draft not having

been credited to the collecting bank to make good its overdraft until after the appointment of the receiver, though the receiver may institute proceedings to recover such amount, the owner of the draft is not entitled to recover it out of the general assets of the collecting bank where it has not actually been collected.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

9. BANKS AND BANKING (§ 268*)—NATIONAL BANK—INSOLVENCY AND RECEIVERS—TRUST FUNDS.

Where drafts were sent to a national bank for collection and remittance and were paid in checks which were indorsed to another bank and credited to the account of the collecting bank to cover overdrafts, the owner of the drafts is not entitled to recover their amount of the receiver of the collecting bank on its insolvency out of the bank's general assets, though the proceeds diminished the indebtedness of the insolvent bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 268.*]

Action by the American Can Company against Christopher L. Williams, as Receiver of the Fredonia National Bank. Decree for plaintiff for part of amount claimed.

See, also, 153 Fed. 882, 82 C. C. A. 628.

Kenefick, Cooke & Mitchell (James McCormick Mitchell, of counsel), for plaintiff.

Frank W. Stevens, for defendant.

HAZEL, District Judge. This action was brought to recover the sum of $28,933.32, from the defendant as receiver of the Fredonia National Bank, a banking corporation organized and existing under the laws of the United States. On June 19, 1905, said bank on account of its insolvency suspended payment, the Comptroller of the Currency took possession of its assets under the provisions of the act of Congress, and a receiver was duly appointed by him. The facts are not in controversy and have been submitted by agreement of the parties. It appears that the Fredonia National Bank, while insolvent, diverted and misapplied the proceeds of certain sight drafts drawn by the plaintiff between May 17, 1905, and June 14, 1905, upon the United States Canning Company and the Fredonia Preserving Company which had been sent to the bank for collection and remittance. The plaintiff bases its right to recover the amount of the drafts on the claim that the bank mixed or blended the proceeds thereof with its own funds, and that therefore a trust was impressed upon the assets which came into the possession of the receiver. Such assets are insufficient to pay the creditors in full, though they were larger than the aggregate amount appropriated by the bank. Debtor and creditor relations between plaintiff and the insolvent bank did not exist and admittedly their relations were distinctly of a fiduciary character, that of a cestui que trust and trustee. There is no dispute over the proposition that the assets of the bank in the possession of the receiver are subject to an equitable lien in plaintiff's favor to the extent that such assets have been augmented by the wrongful act of the bank. But the defendant contends that there can be no preferential payment unless the receiver has in his possession property or funds into which the amount of the drafts can with reasonable certainty be traced or which

in their entirety or in part constitute the proceeds thereof. Before discussing the stipulated facts it probably would not be inappropriate to first state the general rule applicable to fastening special trusts upon receivers of insolvent banking institutions. The great weight of authorities as shown by the decisions of the federal courts which, if there is any conflict of decision, this court is obliged to follow is that trust funds that have been fraudulently diverted or appropriated can be recovered of a receiver whenever such funds are susceptible of identification in the hands of the possessor, and if the trust funds have been intermingled with other property or money rendering it undistinguishable without fault of the trustee a court of equity is powerless to grant relief. But to this rule there are well-recognized exceptions and modifications, and hence, where it is shown that the unlawful appropriation of trust funds resulted in swelling or increasing the general assets of the insolvent then, even though there was such intermingling of the trust funds with the general funds as to render their identity impossible, a court of equity will decree priority of payment to the cestui que trust over the common creditors. That a trust is impressed upon the general mass by reason of the confusion resulting from mingling therewith the converted fund was first authoritatively decided in Frelinghuysen v. Nugent (C. C.) 36 Fed. 239, where the rule is stated as follows:

"Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it, depended upon the ability of identifying it; the equity attaching only to the property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried."

This doctrine was expressly approved by the Supreme Court in Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696, and the same equitable principle was applied in National Bank v. Insurance Company, 104 U. S. 54, 26 L. Ed. 693. And such important extension from the former English rule was logically and comprehensively stated by the Circuit Court of Appeals for the Ninth Circuit in Spokane County v. First National Bank of Spokane, 68 Fed. 979, 16 C. C. A. 81. The rule is briefly stated in Multnomah v. Oregon National Bank (C. C.) 61 Fed. 912, as follows:

"It is settled that a person may follow and reclaim his property wrongfully appropriated by another so long as he can find it. If its form has been changed, he may follow the substantial equivalent of his property, in whatever form. The property into which his own has been changed is impressed with a trust in his favor. But the great weight of authority is against any extension of the rule beyond this."

See, also, Insurance Company v. Caldwell, 59 Kan. 156, 52 Pac. 440.

In Beard v. Independent Dist. of Pella City, 88 Fed. 375, 31 C. C. A. 562, the extension of the rule was tersely stated in this language:

"Unless it appears that the fund or estate coming into the possession of the receiver has been augmented or benefited by the wrongful use of the trust fund, no reason exists for giving the owner of the trust fund a preference over the general creditors."

An examination of the cases hereinabove cited and other cases to which attention has been directed in the briefs warrants the deduction that to impress a lien upon the general assets of the Fredonia National Bank it must affirmatively appear that the proceeds of the drafts delivered to the bank for collection can be traced into the assets of the bank in the hands of the receiver, or, in the alternative, that the fraudulently diverted proceeds have cumulated on the general assets or added a gain thereto. This brings me to the principal question herein involved—whether the stipulated facts reasonably indicate that the assets in the defendant's possession have been augmented by the appropriated proceeds of the drafts.

1. The defendant admits that the proceeds of the draft of June 14, 1905, amounting to $1,016.72, was paid to him as receiver by the Lake Shore National Bank, and therefore without further controversy the plaintiff is entitled to recover the amount of the check received, to wit, $1,017.73.

2. Draft dated May 25, 1905, for $1,544.48 was paid to the Fredonia National Bank by the drawee by check on the Columbia National Bank. At such time there existed banking relations between said banks, and when the check was presented credit was given on the books of the Columbia National Bank to the Fredonia National Bank. Subsequently the balance of the account amounting to $750.11 was paid by the Columbia National Bank to the defendant receiver and the question now arises whether the plaintiff is entitled to impress a trust upon the entire balance. The check in payment of the draft in question was received by the Columbia National Bank on June 1, 1905, and the credit to the Fredonia National Bank at the close of said day was $1,545.03. On June 3d, the credit balance of the Fredonia National Bank had been reduced to $77.23, and on June 20th, on closing its doors, the credit balance amounted to $750.11, which amount included the first-mentioned balance of $77.23. The defendant is entitled to have a lien upon the lowest balance, as presumptively such balance included the remaining portion of the check received in payment of the draft. It makes no difference that between the two banks there was an open and running account. The general assets passing to the receiver manifestly were augmented by a portion only of the diverted proceeds of the draft under consideration, and to that extent only is the plaintiff entitled to enforce his lien. The authorities hold that where the trust fund is commingled with general funds which are afterwards diminished in amount, the plaintiff's recovery cannot exceed the lowest balance between the period of commingling such funds and the date of the receivership. Boone Co. National Bank v. Latimer (C. C.) 67 Fed. 27; Spokane County v. Bank, supra; Beard v. Independent Dist. of Pella City, supra. In Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100, the Circuit Court of Appeals for the Sixth circuit, in speaking of tracing funds into the general fund, said:

"It is, therefore, a part of the rule applicable to following misappropriated funds into a bank account that, if at any time during the currency of the mingled account the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated except as to this balance, the sum subsequently added to the account from other sources not being contributed to the trust fund."

3. The draft of May 17, 1905, for $1,266.86, drawn on the United States Canning Company was paid by check upon the Manufacturers' & Traders' National Bank of Buffalo, which check was transmitted by the Fredonia National Bank to the Columbia National Bank and by the latter duly credited to the account of the former. The credit balance of the Fredonia National Bank at the time was $1,374.43. On the same day said balance was increased to $6,048.55, but there was a debit of $3,876.09, consisting of a check for $876.09 and a cash withdrawal of $3,000, leaving a credit balance of $2,172.46, which balance, however, was extinguished prior to the closing of the bank and the appointment of the receiver. It is well settled that the burden of proof is upon the plaintiff to trace the amount of the draft into the common assets. Goodell v. Buck, 67 Me. 514; Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154. I incline to the belief that, as the credit balance of the insolvent bank on the day of the withdrawal of the sum of $3,000 in currency was more than sufficient to pay the draft, it may be fairly presumed that such withdrawal was from its own funds and not from those which were subject to an equitable lien. Board of Com'rs v. Strawn, supra; In re Berry, 147 Fed. 208, 77 C. C. A. 434. The proceeds of the draft were not traced to the common fund, and in my estimation there was no augmentation of the same by reason of their diversion.

4. Six drafts on the United States Canning Company and three drafts on the Fredonia Preserving Company with the consent of the drawees, who were depositors in the insolvent bank, were debited to their separate accounts, the bank surrendering to them the drafts and bills of lading. The question is whether the proceeds of such drafts, which concededly were not transmitted to the drawer, augmented the common assets of the bank or whether they were used simply to pay its indebtedness to the drawees. No money actually came into the bank's possession as a result of the payments of the drafts and in each instance they were accepted by the drawees whose deposits were correspondingly reduced. In Multnomah v. Oregon National Bank, supra, the court, in speaking of tracing the fund of a cestui que trust to the general fund, says:

"If his money has been paid out, or has otherwise disappeared, it would not be just that he should take, to the exclusion of the general creditors of the bank, who are in no way responsible for the bank's delinquency, and whose deposits may comprise the entire fund which such creditor seeks to appropriate to his exclusive use."

In Insurance Company v. Caldwell, supra, it is said:

"The mere saving of the estate by the discharge of general indebtedness otherwise payable out of it or by the payment of the current expenses of the business is not any augmentation or betterment of the estate within the meaning of the rule. If the estate has not been increased by specific additions to it or if what previously existed has not been improved or rendered more valuable, it has not been impressed with the trust claimed."

Such I think is the equitable rule applicable to the particular subject under consideration. The general assets of the bank by the stated method of paying the drafts were not augmented or increased, and there was no addition thereto by debiting the drawees between whom and the insolvent bank there existed debtor and creditor relations. Although the insolvent bank may have discharged its liabilities to said depositors yet nothing tangible came to the receiver. His resources were not increased, and by such bookkeeping transferences nothing passed to him which was capable of being set apart or which could be identified. Beard v. Independent Dist. of Pella City, supra; Sunderlin v. Mecosta Savings Bank, 116 Mich. 281, 74 N. W. 478.

5. The draft of June 13, 1905, which was paid by drawee's check payable to the order of the insolvent bank, was indorsed by it and transmitted to the Merchants' Exchange National Bank of New York. On receiving the check the latter credited the account of the Fredonia National Bank, and the check was collected through the clearing house after plaintiff's appointment as receiver. As said draft was not credited to the Fredonia National Bank to make good its overdraft until after the appointment of the receiver and was not collected until two days thereafter, the receiver, if it is necessary, will probably institute proceedings to recover such amount. It is not shown, however, that such proceeds either actually or constructively came into the possession of the receiver, hence it is not thought possible at this time to impress a lien upon the general assets. The principle of Standard Oil Company v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739, and In re Berry, supra, is not thought squarely applicable to the stipulated facts, for in those cases the funds to which the plaintiffs in those suits claimed a lien passed into the hands of the receiver or trustee in bankruptcy.

6. With reference to the payment of certain drafts drawn on the United States Canning Company which were paid in checks and indorsed over to the Merchants' Exchange National Bank of New York, which bank credited the account of the Fredonia National Bank, the plaintiff earnestly contends that such checks when treated as cash augmented the general assets of the bank. The argument is, first, that the checks given in payment of the drafts were accepted by the bank as cash and then mingled with its general assets, and this in and of itself was sufficient to impress a trust on the general mass to the amount of the checks received; and, second, that the proceeds of the drafts were in fact used by the bank to reduce its liabilities, thereby increasing its assets and entitling plaintiff to restitution. It is quite true that, customarily, checks received for deposit are regarded as the equivalent of cash, but in this instance neither the checks nor the cash added anything to the assets of the bank. The case of First National Bank of Montgomery v. Armstrong (C. C.) 36 Fed. 59, cited by plaintiff, is clearly distinguishable. There, a memorandum indicating the nature of the deposit as cash and the name of the owner was placed with the bank's cash, and the court properly held that there was no such mingling as to render identification impossible. In the present case the Fredonia National Bank fraudulently used the checks for the purpose of paying its overdrafts to the Merchants' Exchange Nation-

al Bank, but as the proceeds were not mingled with its general assets, and cannot be traced to the possessor thereof, no equitable lien has been established. Nor has the contention persuasive merit that in reducing its liabilities by paying its debts the general fund was substantially augmented. To diminish the indebtedness by appropriating the plaintiff's money unfortunately did not benefit the insolvent estate or directly increase the assets. If an equitable lien were to attach upon the general assets of the insolvent bank under such circumstances, it is quite conceivable that the bank or its officers, knowing of its insolvent condition, might give a preference to favored debtors (such as banks with which it has established banking relations), and at the same time protect the customer or drawer whose checks or drafts may have been wrongfully diverted. Obviously such a situation would operate to unjustly discriminate against the general creditors who were in no way at fault for the bank's failure to meet its obligations in full. A reduction in liabilities undoubtedly may inure to the benefit of the general creditors, and probably is an indirect augmentation of the fund, but, as already observed, we must not overlook the patent fact that the essentials of the right to impress funds in the hands of the receiver with a lien in favor of the injured party must rest upon the requirement that the diverted proceeds are traceable to the receiver in their original or substituted form, or at least that the common fund coming into his possession has cumulated by some addition thereto.

For the reasons stated, the plaintiff is not entitled to occupy a position in relation to the assets of the bank different than that of the ordinary creditor save as hereinbefore indicated. A decree may be entered for the plaintiff in accordance with this opinion for the sum of $1,094.96, without interest, and without costs to either party.