### In the Matter of COUNTRY CLUB CASUALS, INC., and Prissy, Inc., Bankrupts.

### CAPITAL BANK, Plaintiff,

v.

### COUNTRY CLUB CASUALS, INC., Prissy, Inc., Chase Manhattan Bank, N. A. and A. J. Armstrong Co., Inc., Defendants.

### Bankruptcy No. 79–628–BK–JE–B.

United States Bankruptcy Court, S. D. Florida.

Oct. 30, 1979.

Scott L. Baena, Miami, Fla., for Capital Bank.

Robert A. Schatzman, Miami, Fla., for Trustee.

Timothy J. Norris, Miami, Fla., for A. J. Armstrong Co.

John H. Gunn, Miami, Fla., for Debtors, Country Club Casuals & Prissy, Inc.

Jerry B. Crockett, Miami, Fla., for S. E. Nat. Bank of Miami, Fla.

Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank.

## FINDINGS AND CONCLUSIONS

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiff is a secured creditor of the bankrupts. Its amended complaint (C.P. No. 53) seeks a set-off against $100,000 it holds for the credit of one of the bankrupts, Prissy. It has joined a factor and two banks as defendants in order that all possible claimants be before the court. All the defendants have answered and the factor has asserted a counterclaim. (C.P. Nos. 29, 54, 55 and 80) All parties agree that the court has jurisdiction. The matter was tried before me on October 11 and 19, 1979. This order is a memorandum of decision under B.R. 752(a).

The facts are undisputed and simple. The two bankrupts manufactured women's wear. Their receivables have been factored by the defendant Armstrong under a written agreement since 1977. They filed for bankruptcy on October 29, 1979 under Chapter XI, but have since been adjudicated bankrupts and a trustee speaks for them in this matter.

On the day of bankruptcy, the factor transmitted $95,000 at 11:30 A.M. and $5,000 at 2:13 P.M. to the plaintiff bank, Capital, for the account of the bankrupt Prissy. The transfer was effected electronically through the factor's bank, Chase, and its Miami correspondent, Southeast. The bankruptcy petition was filed at 3:38 P.M. and the bankrupts were advised by plaintiff one minute later through a telephone call that the funds were credited and available in their account with the plaintiff.

The transfer of both items was the result of a clerical error by Armstrong. The payments were intended for two other, unrelated clients in other cities. The mistakes resulted from a clerk's use of the wrong form while encoding instructions to the computer of its bank. The eventful day was the day after Memorial Day and the error was not caught at Armstrong because the staff was shorthanded and the traffic was unusually heavy.

The mistake was detected at 2:30 that afternoon, too late to interrupt the transmission of the funds before they were credited by plaintiff to the bankrupts' account. It is not claimed that any party has acted in reliance upon the mistaken transfer. The funds are readily traceable and remain in plaintiff's custody subject to the decision of this case.

Before trial, the plaintiff and the trustee stipulated, with this court's approval, that their respective claims to this fund would be resolved in a particular manner, the details of which are not pertinent here. They, therefore, present a united front to fend off the claim of Armstrong. Armstrong has, by counterclaim and crossclaim (C.P. No. 29) sought recission and recovery of the mistaken payment. The other banks, Chase and Southeast, are merely conduits. No relief is sought against them or by them and, indeed, Southeast has already been dismissed as a party. (C.P. No. 95) Chase is also dismissed by this order.

Because the Agreement so specifies, New York law controls. U.C.C. 1–105; *Delbrueck & Co. v. Manufacturers Hanover Trust Co.*, S.D.N.Y.1979, 464 F.Supp. 989. In this instance, the pertinent legal principles appear to be essentially universal with one minor exception, which will be noted later.

By the terms of the factoring agreement, the bankrupts' accounts with Armstrong are consolidated into one account and they are jointly and severally liable on that account.

▪ Armstrong's position is that the funds delivered by mistake became impressed immediately with a constructive trust in favor of Armstrong and never became the property of the bankrupts and, therefore, were never subject to setoff by the plaintiff. Armstrong seeks restitution to prevent unjust enrichment.

The equitable principles involved are too fundamental to require extended analysis. Any court with equitable powers would, under these circumstances, grant the relief sought by Armstrong, unless Armstrong has, by its action or inaction, disqualified itself under some equitable ground. As has already been noted, no other equity has intervened to prevent restitution. The fact of bankruptcy does not generate any defense that would not be available had bankruptcy not occurred.

A case in point is *In re Berry*, 2 Cir. 1906, 147 F. 208, applying New York law, where the court said:

"Stripped of all complications and entanglements we have this naked fact that Raborg & Manice by mistake paid Berry & Co. $1,500, which they did not owe and which Berry & Co. could not have retained without losing the respect of every honorable business man. . . . If $1,500 had been placed in a package by Raborg & Manice and delivered to a messenger with instructions to deposit it in their bank, and the messenger, by mistake, had delivered it to Berry & Co., it will hardly be pretended that the latter would acquire any title to the money, and yet the actual transaction in legal effect gave them no better right.

It is urged that to compel restitution now will work injustice to the general creditors of the bankrupts, but this contention loses sight of the fact that the money in dispute never belonged to the bankrupts, and their creditors, upon broad principles of equity, have no more right to it than if the transaction of November 25th had never taken place. . . . The proposition that Raborg & Manice, who have done no wrong, shall be deprived of their property and that it shall be divided among creditors to whom it does not fairly belong, is not one that appeals to the conscience of a court of equity. . . . When the money was paid under a plain mistake of fact equity impressed upon it a constructive trust which followed it through the bank and into the hands of the trustees."

▪ The fact that the transfer of funds in our case was effected electronically does not require the application of any different principles than would govern if Armstrong had mistakenly delivered $100,000 in currency by messenger to the plaintiff.

Both parties have briefed *Chase Manhattan Bank, N.A. v. Israel British Bank (London) Ltd.*, a decision of the English High Court of Justice, Chancery Division, in July, 1979. The case report is not readily available here, but is useful because it is a recent and thorough analysis of New York law applicable to a mistaken transfer of funds followed by bankruptcy. That court also relied upon *In re Berry*.

The first defense offered here is that the transfer of funds was not a mistake, but was intentional. The trustee asks me to believe that Armstrong made up their story after they learned of bankruptcy. I disagree. No one would make up the story I have heard and I find Armstrong's proof that the transfer was a mistake to be completely clear and convincing. Without belaboring the details, the clerks involved and the records fully substantiate that the funds were intended for two other entities that requested those funds that day. The bankrupts' last request for funds was made five days earlier and had been funded the same day. The bankrupts' principal candidly acknowledged that he was surprised. He was told of the mistake the next day. According to Armstrong's records, it owed no money to the bankrupts on the day the mistake was made and, indeed, was owed some $80,000. While the status of the account is disputed by the bankrupts, it is clear that Armstrong did not consider itself indebted and could not reasonably have intended to send any money to the bankrupts on the day in question.

The second defense is that the transaction reached a point of finality under U.C.C. 4–303(1)(a)–(d) that made it impervious to any equitable remedy. I disagree. This section is clearly designed to protect parties who are in the chain of transfer from liability. That threat is not present in this case. The "final payment" doctrine has not been applied, to my knowledge, and should not be applied to prevent equitable relief to undo a mistake. U.C.C. 1–103 provides that:

"Unless displaced by the particular provisions of this code, the principles of law and equity, including . . . the law relative to . . . mistake . . . or other validating or invalidating cause shall supplement its provisions."

Plaintiff has also argued that a provision in Florida's U.C.C. not adopted in New York, reinforces its position. That argument must be rejected because New York law controls.

The third defense is that Armstrong was so negligent in causing this mistake that it should be denied relief. *In re Berry* also resulted from the payor's clerical error. For relief to be denied in this case on account of plaintiff's conduct, I believe that there would have to be some intervening equity in favor of a party prejudiced by that conduct. That has not happened here. In the words of the English court:

"There may, of course, be special cases where the conduct or inaction of a party who has paid money by mistake similarly makes it inequitable for him to recover it to the prejudice of third parties, but nothing in the facts pleaded and proved in the present case discloses any such situation".

Finally, the defendants argue that plaintiff lacks the standing to seek restitution of money transmitted by its bank because its bank, Chase, credited its account on July 6 with the sum in question and, therefore, Armstrong has suffered no loss. I disagree. Counsel represents that and it is undisputed that Chase acted here as Armstrong's banking agent and that Armstrong must hold Chase harmless in this transaction. To deny relief to Armstrong on this ground is to lose sight of the very purpose of equitable remedies. To again quote the English court, rejecting a similar argument:

"When equitable rights are in question, the Court does not encourage fine distinctions founded on the technicalities of financial machinery."

There are no other contentions that appear to me to merit discussion. It follows that Armstrong is entitled to judgment against the plaintiff and the trustee upon its counterclaim and crossclaim and that all other prayers for relief be denied. As is required by B.R. 921(a), a separate judgment will be entered that Armstrong will recover from Capital and the trustee $100,-000. The assessment of interest and the taxation of costs will be considered on motion.